John F. KREIS, Appellant,

v.

SECRETARY OF the AIR FORCE.

No. 87–5037.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 1, 1988.

Decided Feb. 7, 1989.

Daniel M. Schember, Washington, D.C., for appellant.

Linda Halpern, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee. Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellee.

Before RUTH BADER GINSBURG, SILBERMAN and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

**D.H. GINSBURG, Circuit Judge:**

Appellant, John F. Kreis, challenges the corrective relief recommended by the Air Force Board for the Correction of Military Records and approved by the Secretary of the Air Force in connection with this effort to secure a military promotion. The district court dismissed appellant's complaint for lack of subject matter jurisdiction, concluding that the entire complaint raised nonjusticiable claims. 648 F.Supp. 383 (D.D.C.1986). We affirm in part, reverse in part, and remand for the district court to determine whether the Secretary's action was arbitrary or capricious.

## I. BACKGROUND

At all relevant times, appellant was a major in the United States Air Force. In 1979, an Air Force Inspector General recommended that Major Kreis be reprimanded and reassigned "for acting inappropriately" while on an overseas military trip and "for making inappropriate comments to enlisted personnel about fellow and senior officers." The Inspector General did not consult Major Kreis during the preparation of the report but, instead, based his conclusions on third party sources.

Following receipt of this report, Lieutenant General Hughes, commander of the Pacific Air Force, cancelled Major Kreis's previously scheduled assignment to a position of greater responsibility at the headquarters of the Tactical Air Command; instead, he reassigned appellant to a squadron operations position with less responsibility, a position similar to one appellant had held when he was but a captain. As an "indorser" on appellant's Officer Effectiveness Report (OER), Lieutenant General Hughes also downgraded the enthusiastic evaluation that the initial "rater" had given Major Kreis. Finally, Lieutenant General Hughes issued a written reprimand to Major Kreis and placed this document in appellant's official file. After a meeting with appellant, however, Lieutenant General Hughes agreed to remove the reprimand from the file.

## A. *Air Force Administrative Proceedings*

Through internal administrative procedures, Major Kreis then sought removal of Lieutenant General Hughes's evaluation from his OER or, alternatively, voidance of the entire OER. After receiving testimony, the Air Force Board for the Correction of Military Records, in 1980, concluded that appellant had "demonstrated the existence of probable error or injustice." The Board then stated:

[T]he evidence applicant has presented creates sufficient doubt in our minds that the contested report is an accurate reflection of his duty performance during that reporting period. However we do not feel that the evidence presented warrants a recommendation that the indorser's ratings and comments be voided. In an effort to solve this dilemma, and to afford applicant equity, we therefore recommend applicant's record be corrected by voiding the contested report.

The Assistant Secretary of the Air Force accepted this recommendation on behalf of the Secretary. Pursuant to Air Force regulations concerning voided OERs, the Assistant Secretary ordered that appellant's contested OER be removed and replaced with an AF Form 77 stating: "Not rated for the above period. Report was removed by Order of the Secretary of the Air Force."

Shortly thereafter, a selection board considered but did not select appellant for promotion to lieutenant colonel. Appellant then submitted another application to the Board, in which he argued that the void created by removal of the OER and the prejudicial effect of the AF Form 77, combined with his 1979 reassignment to a position of reduced responsibility, had prejudiced his chances for promotion. Major Kreis requested that the Board not only void his recent nonselection for promotion but also award him retroactive promotion. The Board denied this application, stating that the AF Form 77 was not prejudicial; it did not separately address appellant's 1979 reassignment.

In 1983, appellant requested that the Board reconsider its denial of retroactive promotion. Appellant submitted additional evidence which, he claimed, demonstrated the prejudicial effect of his 1979 reassignment and voidance of his OER. In addition, he argued that prior Board cases involving awards of retroactive promotion were analogous to his own. During the pendency of this application, two more selection boards passed over Major Kreis for promotion.

Upon reconsideration, the Board reaffirmed its denial of retroactive promotion, stating that the reason for appellant's nonselection "cannot be definitively ascertained" and that the evidence submitted did not "conclusively prove" that appellant would have been promoted but for the events of 1979. The Board added that the evidence was not "sufficiently compelling to warrant a definitive finding that applicant's change in assignment was due to the results of the [Inspector General's] investigation."

In 1984, Major Kreis again sought reconsideration by the Board. This time he asked the Board to recommend restoration of his voided OER, with Lieutenant General Hughes's evaluation deleted, as well as retroactive promotion. In the alternative, Major Kreis asked the Board to recommend that the Secretary void appellant's nonselections for promotion and refer his record to special selection boards, accompanied by a statement that "[t]he OERs before and after the voided report are more characteristic of the quality of Major Kreis' performance during the rating period [covered by the voided report]" and that Major Kreis "should have been assigned," in 1979, to a position of increased responsibility at the Tactical Air Command.

In 1986, the Board granted appellant's application, in part, recommending that the Secretary reinstate the rater's portion of the OER without Lieutenant General Hughes's comments. With respect to appellant's further request for retroactive promotion, however, the Board emphasized that "[t]he function of a selection board is highly discretionary" and reiterated that

"the specific reason for an officer's nonselection [for promotion] cannot be definitively ascertained." For this reason, a recommendation of promotion is not warranted, it said, except to correct an "egregious" error or injustice.

The Board then concluded that:

[T]he possible injustice of applicant's reassignment in 1979 (which has not been firmly established to our satisfaction) and the presence of the properly prepared AF Form 77 ... in applicant's selection folder does not establish a promotion injustice of such a magnitude warranting promotion by this Board.

The Board did not address appellant's alternative request for insertion of a statement in his record to indicate that his 1979 reassignment had resulted from "error and injustice," presumably due to its earlier finding that appellant had failed to show that the Inspector General's investigation had caused the reassignment. The Board did, however, recommend that Major Kreis be reconsidered for promotion, based on his corrected record, by special selection boards for each of the years 1980 to 1985. The Secretary accepted the Board's recommendations. Each of the special selection boards then considered but did not select Major Kreis for promotion to lieutenant colonel.

B. *District Court Proceedings*

In a complaint filed against the Secretary before the Board issued its recommendations in 1986, appellant argued that he was entitled to retroactive promotion "[u]nder principles established by prior Correction Board cases." In the alternative, he requested "voidance of his passovers, insertion in his record of a fully adequate statement overcoming the prejudice of his unjust OER void [sic] and 1979 reassignment, and referral of his corrected record to special selection boards for promotion consideration." In the event that the Secretary failed to provide "adequate" relief, appellant called upon the court to declare the Secretary's action "arbitrary and capricious," and to order the Secretary "to state reasoned conclusions on all relevant legal issues, to apply the proper standard of

review, to articulate the principles determining the circumstances in which retroactive promotion is a proper Correction Board remedy, and to determine whether under those principles that remedy is appropriate in this case."

The Secretary moved to dismiss, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief may be granted. In terms more appropriate to a Rule 12(b)(1) motion, however, the Secretary argued that appellant's claims are not justiciable and that the district court should therefore dismiss the case for lack of jurisdiction.

After the Board had issued its recommendations, the district court granted the Secretary's motion to dismiss. On authority of *Mindes v. Seaman,* 453 F.2d 197 (5th Cir.1971), the court held that appellant's complaint is nonjusticiable, reasoning that the relief sought therein would require the court "to substantially interfere in such a manner as to seriously impede the Air Force in the performance of its vital duty of conducting the orderly process of promotion and advancement of personnel." 648 F.Supp. at 386.

## II. JUSTICIABILITY

◼ The justiciability of this case involving a claim to a military promotion and distinct claims for the correction of military records is limited by the fundamental and highly salutary principle that:

> [J]udges are not given the task of running the Army. The responsibility for setting up channels through which [complaints of discrimination, favoritism, *et cetera*] can be considered and fairly settled rests upon the Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.

*Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 540, 97 L.Ed. 842 (1953). The Constitution vests "[t]he complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force" exclusively in the legislative and executive branches. *Gilligan v. Morgan,* 413 U.S. 1, 10, 93 S.Ct. 2440, 2446, 37 L.Ed.2d 407 (1973).

◼ Appellant's request for retroactive promotion falls squarely within the realm of nonjusticiable military personnel decisions. To grant such relief would require us to second-guess the Secretary's decision about how best to allocate military personnel in order to serve the security needs of the Nation. This court is not competent to compare appellant with other officers competing for such a promotion. Not only is that task inherently unsuitable to the judicial branch, but also Congress has vested in the Secretary alone the authority to determine whether the original selection boards erred in comparing appellant to the other candidates for promotion. *See* 10 U.S.C. § 628(b)(1); *cf. VanderMolen v. Stetson,* 571 F.2d 617 (D.C.Cir.1977) (promotion granted by Air Force may not be rescinded by Air Force based upon illegitimate consideration); *see also Guy v. United States,* 608 F.2d 867, 874, 221 Ct.Cl. 427 (1979) (court cannot order promotion absent "clear, legal entitlement to it," because "[p]romotion under the selection board system results from the exercise of discretionary functions reserved for the Executive branch"). Insofar as Major Kreis seeks a retroactive promotion by judicial decree, therefore, we affirm the district court's dismissal of his case as nonjusticiable.

There is also a more modest request in appellant's complaint, however. While all his efforts are aimed ultimately at securing his promotion to lieutenant colonel, his alternative claims require the district court merely to evaluate, in light of familiar principles of administrative law, the reasonableness of the Secretary's decision not to take certain corrective action with respect to appellant's record. Adjudication of these claims requires the district court to determine only whether the Secretary's decision making process was deficient, not whether his decision was correct.

Appellant argues, first, that the Secretary applied an incorrect, and unduly harsh, standard for relief when he denied retroactive promotion on the ground that appellant had not shown error or injustice "so egregious" that such relief was "clearly warranted." Second, appellant maintains that the Secretary was required to explain his "departure from principles in past cases affording [retroactive] promotion...." Third, appellant contends that the Secretary failed to address the prejudicial effect of the inclusion in appellant's record of a partially voided OER and low level reassignment instead of the "glowing" recommendations and high level assignment that he alleges he "would have had but for the injustice inflicted upon him."

To grant the relief implicit in these claims would not require the district court to substitute its judgment for that of the Secretary regarding the allocation of military personnel in light of the security needs of the Nation. The court would only require the Secretary, on remand, to explain more fully the reasoning behind his decision and, with respect to his denial of a retroactive promotion, to apply the appropriate legal standard. The Secretary would remain free, following this reevaluation, to reaffirm his original determination to deny appellant further relief. In short, once we dispose of the request for a judicially ordered promotion, the review sought by appellant looks like nothing more than the normal review of agency action, in which we require only that the agency exercise its discretion in a reasoned manner, but we defer to the agency's ultimate substantive decision. *See Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971).

We find further support for the justiciability of appellant's alternative claims in *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), in which the Supreme Court indicated that decisions by the Board's counterpart for the correction of naval records "are subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence." *Id.* at 303, 103 S.Ct. at 2367. Though *Chappell* itself did not involve review of a correction board, the Court did refer to such review as a "special factor[ ]" supporting its holding that enlisted personnel may not maintain a *Bivens* action against their superior officers. *Id.* 462 U.S. at 304, 103 S.Ct. at 2367–68. We have previously relied upon this statement in *Chappell* as authority for our review of decisions by correction boards for the other military branches. *Gay Veterans Association, Inc. v. Secretary of Defense*, 850 F.2d 764, 768 (D.C.Cir.1988); *Bois v. Marsh*, 801 F.2d 462, 467 n. 9 (D.C.Cir.1986). *See also Knehans v. Alexander*, 566 F.2d 312, 315 (D.C.Cir.1977) (Army correction board's denial of reconsideration for promotion was not arbitrary or capricious; pre-*Chappell*).

In dismissing this case, the district court considered neither *Chappell* nor our decisions relying upon it. Instead, the court concluded that appellant's entire complaint is nonjusticiable based solely on *Mindes v. Seaman*, 453 F.2d 197 (5th Cir.1971), which, the district court noted, we cited in *Dilley v. Alexander*, 603 F.2d 914, 920 (D.C.Cir.1979). Our reference to *Mindes*, however, was not intended to foreclose judicial review of decisions involving the correction of military records; indeed, in the same paragraph, we said that the federal courts may inquire whether the Secretary's action in this area is "arbitrary, capricious, or contrary to the statutes and regulations governing that agency." *Id.* Nor did we adopt the *Mindes* court's four factor analysis, which, as the Third Circuit has pointed out, erroneously "intertwines the concept of justiciability with the standards to be applied to the merits of [the] case." *Dillard v. Brown*, 652 F.2d 316, 323 (3rd Cir. 1981).

■ We hold, therefore, based on *Orloff* and *Gilligan*, that the district court correctly dismissed as nonjusticiable appellant's claim for a retroactive promotion; and that, based upon *Chappell* and our own cases following it, the district court erred in dismissing the alternative claims on that same ground.

## III. Reviewability Under the Administrative Procedure Act

 The Secretary urges us to affirm the dismissal of the remaining claims on the alternative ground that they are unreviewable under the Administrative Procedure Act. The APA erects a "presumption of judicial review" at the behest of those adversely affected by agency action, *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967), except insofar as "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). A particular type of action is within the agency's unreviewable discretion if the statute authorizing it is "drawn in such broad terms that in a given case there is no law to apply." *Overton Park*, 401 U.S. at 410, 91 S.Ct. at 820 (quoting S.Rep. No. 752, 79th Cong. 26 (1945)).

At the outset, we note that *Chappell*, 462 U.S. at 303, 103 S.Ct. at 2367—stating that decisions regarding the correction of military records are reviewable under the "arbitrary or capricious" standard of APA § 706—casts serious doubt on the Secretary's position. The Secretary points, however, to the recent decision in *Webster v. Doe*, — U.S. —, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), where the plaintiff claimed that he had been fired by the Central Intelligence Agency because of his homosexuality, and the Supreme Court held that Congress had committed the decision to terminate a CIA employee to the unreviewable discretion of the Director of Central Intelligence.

In *Webster*, the Court drew upon both the precise wording of the authorizing statute and the context of the Director's decision. Congress specifically empowered the Director to terminate a CIA employee "whenever [he] 'shall *deem* such termination necessary or advisable in the interests of the United States' (emphasis added), not simply when the dismissal *is* necessary or advisable to those interests." 108 S.Ct. at 2052 (quoting 50 U.S.C. § 403(c)). The Court concluded that "[t]his standard fairly exudes deference to the Director, and appears to foreclose the application of any meaningful judicial standard of review." 108 S.Ct. at 2052.

The Court's distinction between the exercise of a particular condition as an "objective fact," on the one hand, and an administrator's determination of the existence of that condition, on the other, has an ancient and honorable lineage. To Plato, underlying reality is not within mortal reach at all. *See Republic*, Bk. VII at 514–21 (Stephanus ed.) (allegory of the cave). While Congress need not be so self-effacing, it does from time to time concern itself with perception rather than reality. Thus, as Justice Brandeis noticed in his separate opinion in *Crowell v. Benson:*

> The power of Congress to provide by legislation for liability under certain circumstances subsumes the power to provide for the determination of the existence of those circumstances. *It does not depend on the absolute existence in reality of any fact.*

285 U.S. 22, 85, 52 S.Ct. 285, 306, 76 L.Ed. 598 (1932) (Brandeis, J., dissenting) (emphasis added).

The statutory provisions at issue here draw a similar distinction between the objective existence of certain conditions and the Secretary's determination that such conditions are present. The Secretary, acting through the Board, "may correct any military record of that department *when he considers it necessary* to correct an error or remove an injustice," 10 U.S.C. § 1552(a) (emphasis added), not simply when such action *is* necessary to correct an error or to remove an injustice. Related provisions state that the Secretary may convene a special selection board *"if [he] determines"* either that the decision of the original selection board involved "material error of fact or material administrative error" or that the board did not have before it "material information." 10 U.S.C. § 628(b)(1) (emphasis added). Like the statute at issue in *Webster*, this scheme, too, "fairly exudes deference" to the Secretary.

The decision in *Webster* also turned in part upon the context in which the statutory mandate operated. The Court ob-

served that Congress made the CIA responsible for "protecting intelligence sources and methods from disclosure"; consequently, "the Agency's efficacy, and the Nation's security, depend in large measure on the reliability and trustworthiness of the Agency's employees." 108 S.Ct. at 2052. *Webster* thus involved an executive determination particularly unsuited to judicial assessment, *viz.*, whether an individual's continued employment threatens the security of American intelligence interests. The efficient operation of the Air Force is, of course, also central to the national security.

There the parallels end, however. The statute governing the Secretary's consideration whether to correct military records authorizes him only to evaluate the "error" or "injustice" said to warrant correction, 10 U.S.C. § 1552(a); this is a considerably narrower inquiry than the determination, vested in the Director of Central Intelligence, whether an employee's termination is "necessary or advisable in the interests of the United States." 50 U.S.C. § 403(c). The Director could presumably take into account *any* factor favoring a particular employee's termination, without having to document his reasoning for judicial inspection —presumably because the Director may legitimately find a termination warranted for reasons that cannot safely be shared with anyone outside the Agency, much less spread upon the pages of the case reports.

■ The Secretary, on the other hand, does not claim that national security concerns would constrain him in explaining his refusal to correct an error or injustice. A court can review that explanation, moreover, without venturing beyond the conventional judicial function. Nor need it substitute its judgment for that of the Secretary in order to review, for example, his assessment of whether changes to Major Kreis's record are necessary "to correct an error or remove an injustice." At most, as we have observed with regard to justiciability, the consequence of such review will be only to require the Secretary to explain more fully the process by which he reached his assessment. We conclude, therefore, that *Webster* does not alter this court's previous

understanding that decisions of the Board are reviewable under the APA, albeit by an unusually deferential application of the "arbitrary or capricious" standard, as explained below.

Nominally, of course, the terms of § 706 of the APA apply alike to all agency actions subject to review thereunder. In practice, however, the question whether a particular action is arbitrary or capricious must turn on the extent to which the relevant statute, or other source of law, constrains agency action. While the broad grant of discretion implicated here does not entirely foreclose review of the Secretary's action, the way in which the statute frames the issue for review does substantially restrict the authority of the reviewing court to upset the Secretary's determination. It is simply more difficult to say that the Secretary has acted arbitrarily if he is authorized to act *"when he considers it necessary* to correct an error or remove an injustice," 10 U.S.C. § 1552(a) (emphasis added), than it is if he is required to act whenever a court determines that certain objective conditions are met, *i.e.*, that there has been an error or injustice.

The Secretary may, in other words, have a reason for considering that it is not necessary to alter an applicant's military record in order to correct even an undisputed error or to remove even a conceded injustice. Drawing upon our own experience, we can readily envision the Secretary, for example, exercising his discretion not to correct an error upon which nothing turns by reason of mootness, lack of harm to the person in question, or inability by such correction to redress the harm claimed. Afield of our experience, we can imagine that the alteration of a record may correct one injustice only to commit another, or perhaps only to incur some other equally significant institutional cost. All such balancing of considerations is to be done by the Secretary, free of judicial second-guessing. Such determinations are well within his discretion.

So long as the Secretary's exercise of that discretion is not to be utterly unreviewable, however, he must give a reason that a court can measure, albeit with all

due deference, against the "arbitrary or capricious" standard of the APA. Perhaps only the most egregious decisions may be prevented under such a deferential standard of review. Even if that is all the judiciary can accomplish, in reconciling the needs of military management with Congress's mandate for judicial review, then do it we must; it is not for us but for Congress to say whether the game is worth the candle.

## IV. CONCLUSION

Were it a question of first impression, we would be more sympathetic to the Secretary's argument that his promotion decisions under § 1552(a) are committed by law to his unreviewable discretion, particularly in light of the Supreme Court's recent decision in *Webster*. That case is not controlling in the present context, however, for the reasons canvassed above.

Therefore, while we conclude that the district court correctly dismissed appellant's claim for retroactive promotion, we hold that it erred in dismissing, as nonjusticiable, appellant's alternative claims. Further finding that the Secretary's decision to deny corrective relief is reviewable under the APA, we remand to the district court for review proceedings not inconsistent with this opinion.

*So Ordered.*