**Louis A. DALEANDRO, Plaintiff,**

v.

**John H. DALTON, Secretary of the Navy, Defendant.**

**Civil Action No. 96–999–LFO.**

United States District Court, D. Columbia.

Dec. 10, 1996.

Kevin J. Barry, Chantilly, VA, for Plaintiff.

Kathryn Good, Special Assistant U.S. Attorney, Washington, D.C., for Defendant; CDR Robert H. Schapler, JAGC, USN, Office of the JAG, Alexandria, VA, of counsel.

*MEMORANDUM*

OBERDORFER, District Judge.

Plaintiff, a seaman in the United States Navy, challenges the decision of the Secretary of the Navy (by his delegate) not to remove from plaintiff's official record documents indicating that plaintiff tested positive for LSD. The matter is before this Court on

cross-motions for summary judgment. It is undisputed that (1) the random test in question was positive, (2) there were no defects in the testing procedure, (3) plaintiff has offered no explanation as to how LSD came into his system, but denied ingesting it, and (4) his record of service is otherwise exemplary.

## I.

The procedural history of the case is so not straightforward. After a January 11, 1994 non-judicial punishment hearing, plaintiff's commanding officer concluded that plaintiff had wrongfully used LSD, ordered him to forfeit $484 for two months, placed him on restriction with heavy duty for 45 days, and recommended that the Navy administratively separate plaintiff from the service. Although a retesting of the randomly collected urine sample confirmed the positive report, an Administrative Discharge Board voted 2 to 1 to recommend to the Chief of Naval Personnel that the Navy retain plaintiff in the service. The Chief of Naval Personnel decided, despite the recommendation of plaintiff's commanding officer, to retain him in the Navy—where he continues to serve and receive promotions.

With the favorable decision on his retention in the Navy in hand, plaintiff applied to the Board of Corrections of Naval Records for removal of the LSD-related documents from his record. The Board found that the critical urine sample contained twice the amount of drug required for a positive reading, the test was reliable, and that plaintiff offered no explanation of how LSD got into his system. The Board also found no fault with the non-judicial punishment imposed by plaintiff's commanding officer and refused to recommend the relief sought by plaintiff. After further consideration, however, the Board voted 2 to 1 to reverse itself because it did "not believe that the evidence showed that [plaintiff] used LSD as alleged." Administrative Record (A.R.) at 24. The majority noted that there was nothing in his record, either before and after the positive test and administrative sanction that followed "to indicate that he would use ... [drugs] and much to indicate that he would not do so." Id. at 12. The majority also noted the absence of eye witnesses to his alleged use, any

evidence of behavior reflecting drug use, plaintiff's adamant denial of drug use, and plaintiff's offer to submit to a lie detection test. The majority also considered expert evidence that LSD could be ingested through the skin and is water soluble. In light of the foregoing, the majority was "unwilling to infer that the presence of LSD in [plaintiff's] system indicated that he wrongfully used the drug." Id. at 27. It recommended expunging from plaintiff's record any documents concerning drug use.

Considering the same facts, the minority member of the Board could not conclude that plaintiff's commanding officer abused his discretion or was arbitrary and capricious. Id. at 29. For authority that the positive test alone can supply a preponderance of the evidence in the non-criminal context, the minority member cited Military Court of Appeals decisions for the proposition that a military court in a criminal case may accept a positive urine test as proof of drug use beyond a reasonable doubt, even if the defense introduces evidence to the contrary. See id. at 29, citing United States v. Harper, 22 M.J. 157, 162–63 (CMA 1986); United States v. Ford, 23 M.J. 331, 332–35 (CMA 1987).

The matter came to a head administratively before the Secretary's delegate. She endorsed the Minority Report. On March 12, 1996, she elaborated upon her conclusion that there was "no probable error or injustice" involved in maintaining the drug use documents on plaintiff's service record:

In reaching my decision I reviewed the record to determine whether there were any material errors in the drug testing procedures or the procedures used for imposing NJP. I also considered the defense offered by MS3 Daleandro that he did not commit the offense alleged and the rationale of the Majority in recommending relief. While I considered Petitioner's service, I did not find it dispositive of whether he had taken illegal drugs. Similarly, I considered, but did not find dispositive the administrative discharge board's finding. I found the Majority's dismissal of the drug test result to be based on speculation, and I agreed with the Minority as to the reliability of the drug test. With respect

to the Petitioner's offering evidence from witnesses who had not observed him under the influence, I again agreed with the Minority's resolution of the issue.

*Id.* at 1.

## II.

The standard for judicial review of an administrative personnel determination by a military agency is well-settled. The governing statute authorizes a service Secretary to "correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a). The Supreme Court long ago stated, and our Court of Appeals more recently reaffirmed, that "the correction of military records are reviewable under the 'arbitrary and capricious' standard of APA § 706...." *Kreis v. Secretary of the Air Force,* 866 F.2d 1508, 1513 (D.C.Cir.1989), citing *Chappell v. Wallace,* 462 U.S. 296, 303, 103 S.Ct. 2362, 2367, 76 L.Ed.2d 586 (1983). *Kreis* elaborated with particular reference to a service Secretary's ruling on a records' correction request:

> Nominally ... the terms of § 706 of the APA apply alike to all agency actions subject to review thereunder.... [T]he way in which the statute frames the issue for review does substantially restrict the authority of the reviewing court to upset the Secretary's determination. It is simply more difficult to say that the Secretary has acted arbitrarily if he is authorized to act *"when he considers it necessary* to correct an error or remove an injustice." 10 U.S.C. § 1552(a) [emphasis in original], than it is if he is required to act whenever a court determines that certain objective conditions are met, *i.e.* that there has been an error or injustice.

*Id.* at 1514.

In this case there was an obvious division of opinion amongst those who considered plaintiff's request. None of the reviewing authorities (or counsel for that matter) pointed to anything resembling an "error" as that term is used in § 1552(a). However, some, for acceptable reasons, thought that plaintiff's otherwise good record made it unjust to keep on his record the isolated drug use matter. Others relied essentially on the bare fact of the positive test. The Secretary could have followed either recommendation without being arbitrary or capricious. Her acceptably rational and, ultimately considered, decision was based on the undisputed fact that plaintiff tested positive. So she did not "consider it necessary to remove" what she did not consider to be "an injustice"—the record flowing from plaintiff's positive test. *See id.* at 1514. It was just the sort of "balancing of considerations ... to be done by the Secretary, free of judicial second-guessing." *Id.* Accordingly, an accompany Order denies plaintiff's cross-motion for summary judgment and grants that filed by defendant.