Richard D. MUDD, M.D., Plaintiff,

v.

Louis CALDERA, Secretary of the Army, et al., Defendants.[1]

Civil Action No. 97–2946 (PLF).

United States District Court, District of Columbia.

Oct. 29, 1998.

---

1. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Louis Caldera, the current Secretary of the Army, is substituted for Togo West, who was sued in his official capacity and was Secretary of the Army at the time the case was filed.

Candida Ewing Staempflil Steel, Severna Park, MD, Philip A. Gagner, Shaughnessy & Gagner, Washington, DC, for Plaintiff.

Suzanne C. Nyland, Assistant U.S. Attorney, Washington, DC, for Defendants.

## OPINION

PAUL L. FRIEDMAN, District Judge.

This case is before the Court on cross motions for summary judgment. After the Court heard argument, the parties filed supplemental briefs addressing an issue raised by the Court regarding the effect of the President's pardon of Dr. Mudd on the relief sought in this case. Upon consideration of the briefs and the arguments of counsel, the Court concludes that plaintiff has established that the decision of the Secretary of the Army to reject the unanimous recommendation of the Army Board for the Correction of Military Records was arbitrary and capricious and unsupported by substantial evidence in the record. Plaintiff's motion for summary judgment with respect to Count I of his complaint therefore will be granted. The other two counts must be dismissed.

## I. FACTUAL BACKGROUND

One sentence in a police log concisely summarizes the events of April 14, 1865. "At this hour the melancholy intelligence of the assassination of Mr. Lincoln, President of the U.S., at Fords Theater was brought to this office." District of Columbia Metropolitan Police Department Blotter, April 14, 1865. Perhaps it is appropriate that the sentence conveys no emotion; no one sentence could have captured the turmoil of the country or the anguish the assassination evoked at that moment in history.

For four years, the nation had struggled against itself, north against south, one American killing another. The war dragged on. By early March 1865, the Union forces had made gains, and it appeared that they would prevail. President Lincoln faced the country on the occasion of his second inaugural address with apparent fatigue.

The progress of our arms, upon which all else chiefly depends, is as well known to the public as to myself, and it is, I trust, reasonably satisfactory and encouraging to all.... Neither party expected for the war the magnitude or the duration which it has already attained. Neither anticipated that the *cause* of the conflict might cease with or even before the conflict itself should cease. Each looked for an easier triumph, and a result less fundamental and astounding..... Fondly do we hope, fervently do we pray, that this mighty scourge of war may speedily pass away. Yet, if God wills that it continue until all the wealth piled by the bondsman's two hundred and fifty years of unrequited toil shall be sunk, and until every drop of blood drawn with the lash shall be paid by another drawn with the sword, as was said three thousand years ago, so still it must be said "the judgments of the Lord are true and righteous altogether."

With malice toward none, with charity for all, with firmness in the right as God gives us to see the right, let us strive on to finish the work we are in, to bind up the nation's wounds, to care for him who shall have borne the battle and for his widow and his orphan, to do all which may achieve and cherish a just and lasting peace among ourselves and with all nations.

PRESIDENT ABRAHAM LINCOLN, SECOND INAUGURAL ADDRESS (March 4, 1865).

By mid-April, Richmond had capitulated to the Union forces and Lee had surrendered to Grant. All not only hoped but knew that soon the war was to end and the soldiers were to come home and life was to return to normal. And so it was with a sense of euphoria or at least profound relief that the Union prepared to celebrate Good Friday, April 14, 1865.

The rest of that evening, of course, is history. President and Mrs. Lincoln attended a benefit at Ford's Theater, a performance of the comedy Our American Cousin.

A shot rang out, a man leaped from the presidential box to the stage and limped from the theater. President Lincoln died the next day.

The flight of John Wilkes Booth and his companion David Herold, who earlier that evening had assisted Lewis Payne in a failed attempt to kill Secretary of State William Seward, led the two men to Charles County, Maryland, where Dr. Samuel Mudd was a physician and tobacco farmer. On the morning of April 15, 1865, the two fugitives who, according to Dr. Mudd, were wearing disguises knocked at Dr. Mudd's door and told him that Mr. Booth had fallen from his horse and broken his leg. They asked Dr. Mudd to set Mr. Booth's leg. Dr. Mudd set the leg and provided the two men with food, lodging for the night and horses to continue on their way.

On April 21, 1865, Dr. Mudd and six others were arrested. Administrative Record ("AR"), Tab 5 (ABCMR Record of Proceedings and Recommendation) at 5.[2] In early May 1865, Attorney General Speed issued a one-sentence opinion that if a military commission was convened it would have jurisdiction to try the conspirators, and President Johnson promptly convened a nine-member Military Commission with Major General David Hunter as its presiding officer (the "Hunter Commission"). *Id.* On May 9, 1865, the eight co-conspirators were charged, *inter alia*, with conspiracy to kill the President and other government officials. *Id.* at 6.

As part of his defense, Dr. Mudd argued that the Hunter Commission lacked jurisdiction to try him and that trial before the Commission violated his constitutional right to a jury trial. The Hunter Commission rejected that argument and found the conspirators guilty as charged.[3] Four were sentenced to death. By a one vote margin, Dr. Mudd was sentenced to life in prison rather than to death and was incarcerated at a military prison in Florida. Two of the remaining conspirators were sentenced to life in prison, and the other was sentenced to six years. AR, Tab 5 (ABCMR Record of Proceedings and Recommendation) at 6. The Attorney General subsequently issued a further and fuller explanation of his determination that the Hunter Commission had jurisdiction over the eight conspirators. AR, Tab 18 (Jurisdictional Opinion, Att'y Gen'l Speed).

On April 3, 1866, the Supreme Court entered an order granting a petition for a writ of habeas corpus in an unrelated case involving Lambdin P. Milligan and six others who had been tried before a military tribunal in Indiana. By subsequent opinion, the Court explained its conclusion that the military commission lacked jurisdiction over Milligan and the other defendants:

Milligan, not a resident of one of the rebellious states, or a prisoner of war, but a citizen of Indiana for twenty years past, and never in the military or naval service, is, while at his home, arrested by the military power of the United States, imprisoned, and, on certain criminal charges preferred against him, tried, convicted, and sentenced to be hanged by a military commission, organized under the direction of the military commander of the military district of Indiana. Had this tribunal the legal power and authority to try and punish this man?

No graver question was ever considered by this court, nor one which more nearly concerns the rights of the whole people; for it is the birthright of every American citizen when charged with a crime, to be tried and punished according to law. . . .

[I]t is insisted that the safety of the country in time of war demands that this broad claim for martial law shall be sustained. If this were true, it could well be said that a country, preserved at the sacrifice of all the cardinal principles of liberty, is not

---

**2.** John Wilkes Booth was killed on April 26, 1865 and so was never tried. David Herold was apprehended and charged with the other conspirators. *See* AR, Tab 5 (ABCMR Record of Proceedings and Recommendation) at 5.

**3.** The only alleged conspirator not tried by the Hunter Commission was John Surratt, who was in Canada at the time of the trial. Surratt later was apprehended and tried in the civilian courts. His trial resulted in a mistrial because the jury could not reach a verdict. The government did not retry him.

worth the cost of preservation. Happily, it is not so.

*Ex Parte Milligan,* 4 Wall. 2, 71 U.S. 2, 118–19, 126, 18 L.Ed. 281 (1866).

After the decision in *Milligan,* Dr. Mudd filed his own petition for a writ of habeas corpus with the Supreme Court. The petition was denied apparently because he had failed to bring the petition first in the district court.[4] Dr. Mudd subsequently filed a habeas petition in the United States District Court for the Southern District of Florida, arguing, *inter alia,* that in light of the Supreme Court's decision in *Milligan,* the Hunter Commission lacked jurisdiction over him. On September 9, 1868, Judge Thomas Jefferson Boynton denied Dr. Mudd's petition. *See* AR, Tab 21 (Opinion). Judge Boynton found that the Supreme Court's decision in *Milligan* did not apply to the Hunter Commission because President Lincoln "was assassinated not from private animosity nor any other reason than a desire to impair the effectiveness of military operations and enable the rebellion to establish itself into a government.... It was not Mr. Lincoln who was assassinated, but the commander-in-chief of the Army for military reasons." *Id. See Ex parte Mudd,* 17 F. Cas. 954 (S.D.Fla. 1868).

Dr. Mudd appealed the denial of his habeas petition to the Supreme Court. On February 8, 1869, however, President Andrew Johnson fully and unconditionally pardoned Dr. Mudd and released him from prison because of his service in battling the yellow fever epidemic. AR, Tab 22 (Pardon of Dr. Mudd). It seems that while incarcerated Dr. Mudd had treated numerous patients suffering from yellow fever, both prisoners and military personnel, and had saved many lives; in fact, he had contracted the disease himself while treating others, but survived. AR, Tab 5 (ABCMR Record of Proceedings and Rec-

ommendation) at 6–7. The Supreme Court then dismissed as moot Dr. Mudd's appeal of the district court's denial of habeas relief because Dr. Mudd was no longer incarcerated.

One hundred and twenty-one years later, Dr. Richard Mudd, the grandson of Dr. Samuel Mudd, filed an application with the Army Board for Correction of Military Records ("ABCMR"), a civilian board set up pursuant to 10 U.S.C. § 1552, to make recommendations to the Secretary of the Army regarding the correction of Army records. Dr. Richard Mudd sought to have the ABCMR correct the record of his grandfather to declare him innocent. AR, Tab 12 (Original Application to ABCMR). Dr. Mudd asserted two errors: (1) that the Hunter Commission lacked jurisdiction to try Dr. Mudd, and (2) that Dr. Mudd was not in fact guilty of the offense with which he was charged.

The ABCMR conducted a hearing, and on January 22, 1992, found, *inter alia,* that (1) Dr. Mudd never served in the military and continued to practice medicine during the Civil War; (2) at the time Lincoln was shot Dr. Mudd was a civilian and a citizen of Maryland; (3) Maryland was a non-secessionist state; and (4) the Hunter Commission had overruled all requests for a change in venue to the civilian courts in the District of Columbia "which were open and functioning." AR Tab 5 (ABCMR Record of Proceedings and Recommendation) at 3, 6, 12. It unanimously concluded that the Hunter Commission "did not have jurisdiction to try [Dr. Mudd], and that in so doing denied him his due process rights, particularly his right to trial by a jury of his peers. This denial constituted such a gross infringement of his constitutionally protected rights, that his conviction should be set aside. To fail to do so would be unjust." *Id.* at 12.[5] The ABCMR therefore recommended that the Secretary of the Army order the Archivist of the United

---

4. There is no record regarding when the petition was brought before the Supreme Court or the precise reason it was denied, but the Army Board for Correction of Military Records ("ABCMR") "felt sufficiently comfortable with the references to include the conclusion in its proceedings that the appeal of a writ of habeas orpus was denied by the Supreme Court." *See* AR, Tab 20 (Memorandum from Richard Allen, ABCMR).

5. The ABCMR found that it was not authorized to consider the innocence or guilt of Dr. Mudd. It addressed only the issue of whether the Hunter Commission had jurisdiction. AR, Tab 5 (ABCMR Record of Proceedings and Recommendation) at 3, 11.

States to correct Dr. Mudd's record by showing that the conviction was set aside. *Id.* at 13.

Six months later, William D. Clark, Acting Assistant Secretary of the Army, denied the Board's recommendation and Dr. Mudd's request because he found that

> the precise issue which the ABCMR proposes to decide, the jurisdiction of the military commission over Dr. Mudd, was specifically addressed at the time in two separate habeas corpus proceedings, one before the Chief Justice of the Supreme Court, the other before a U.S. District Court. There also was an opinion by the Attorney General of the United States.
>
> The effect of the action recommended by the ABCMR would be to overrule all those determinations.

AR, Tab 11 (Memorandum of Mr. William Clark, Acting Ass't Sec'y of the Army).[6]

Dr. Mudd requested reconsideration of Acting Assistant Secretary Clark's decision, and the Army agreed to review it. AR, Tab 3 (Letter from Mr. Robert Silberman, Asst. Sec'y of the Army). On February 2, 1996, Sara Lister, Assistant Secretary of the Army, denied Dr. Mudd's request to vacate Dr. Samuel Mudd's conviction. AR, Tab 1 (Letter from Ms. Sara Lister, Asst. Sec'y of the Army). Assistant Secretary Lister rested her decision in part on the fact that the authorities at the time, both the Attorney General and the district court that had ruled on the habeas petition, concluded that the Hunter Commission had jurisdiction. She also stated:

> Even if one could argue with hindsight that jurisdiction was improper, the appropriate time to make that challenge was 130 years ago within the confines of our judicial system. This was attempted by Dr. Mudd and he lost. His appeal of Judge Boynton's decision to the U.S. Supreme Court was not heard because of the pardon. At that time, he decided not to judi-

cially challenge the jurisdiction again. For the sake of the law and history, his descendants must live with the ramifications of his decision.

*Id.* at 3. Dr. Richard Mudd now challenges the Army's denial of relief.

## II. DISCUSSION

### A. Jurisdictional Issues

#### 1. Justiciability

Plaintiff brought this case pursuant to the Administrative Procedure Act, 5 U.S.C. § 706, the All Writs Act, 28 U.S.C. § 1651, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.* The Court concludes that it has no jurisdiction under the All Writs Act or the Declaratory Judgment Act to grant the relief requested in Counts II and III, and those counts therefore will be dismissed. Count I, however, is justiciable.

■ Count II seeks a writ of mandamus pursuant to the All Writs Act, directing the Secretary of the Army to adopt the recommendation of the ABCMR and to transmit an order to the Archivist of the United States, the custodian of the Hunter Commission's report of conviction, to correct the records to reflect that Dr. Mudd's conviction has been set aside. Complaint at 14. Count III seeks to have the Court issue a Declaratory Judgment that "Dr. Samuel A. Mudd, M.D. was wrongfully convicted on or about June 30, 1865 of conspiring to assassinate President Abraham Lincoln in violation of Due Process of Law as required by the Fifth Amendment to the United States Constitution." Complaint at 15. The relief requested in these two counts would require the Court to independently evaluate whether the Hunter Commission in fact had jurisdiction over Dr. Mudd. That determination is entrusted to the Secretary of the Army, and this issue therefore is not justiciable. *See Barber v. Widnall,* 78 F.3d 1419, 1423 (9th Cir.1996)

---

**6.** Acting Assistant Secretary Clark was wrong when he stated that the Supreme Court "specifically addressed" the jurisdiction of the Hunter Commission. At most, the Supreme Court concluded on Dr. Mudd's first petition that such an argument must first be raised in a habeas petition at the district court level and on appeal from the second petition that the issue had become moot by virtue of the President's pardon of Dr. Mudd. Because Acting Assistant Secretary Clark's decision is not the "final agency decision" under review, however, the fact that he was wrong is irrelevant.

(court's role is not to evaluate petitioner's claims on the merits, "but only to review the Secretary's decision to ensure that it complied with the law, was rational, and was based on substantial evidence"); *Kreis v. Secretary of the Air Force*, 866 F.2d 1508, 1511 (D.C.Cir.1989) (same).

By contrast, Count I seeks review under the Administrative Procedure Act of Assistant Secretary Lister's February 2, 1996 decision refusing to vacate Dr. Mudd's conviction. That claim clearly raises a justiciable issue under the APA: whether Assistant Secretary Lister's decision was arbitrary, capricious or not in accordance with law or was unsupported by substantial evidence in the record. *See Kreis v. Secretary of the Air Force*, 866 F.2d at 1511 (APA claim justiciable because "adjudication of these claims requires the district court to determine only whether the Secretary's decision making process was deficient, not whether his decision was correct").

### 2. Mootness

At oral argument, the Court *sua sponte* raised the issue of whether the full and unconditional pardon offered by President Johnson and accepted by Dr. Mudd in 1869 effectively blots out Dr. Mudd's conviction and moots the case. The parties appeared to agree that the pardon has no effect on this case and both sides filed supplemental memoranda to that effect. Upon consideration of the supplemental memoranda and the arguments presented by counsel at the hearing, the Court is persuaded that the pardon conferred by President Johnson does not render plaintiff's claims moot.

The effect of a full and unconditional pardon is far from clear. In *Ex Parte Garland*, 4 Wall. 333, 71 U.S. 333, 380–81, 18 L.Ed. 366 (1866), the Supreme Court stated that a full pardon "blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence." If the effect of President Johnson's pardon was to blot out of existence Dr. Mudd's guilt and to place Dr. Mudd in the position of never having committed the offense, this case would present no issue for the Court to resolve. Dr. Mudd's only challenge in this case would be to a conviction that no longer exists. That statement in *Garland*, however, has not survived unscathed. Nearly fifty years after *Garland*, the Supreme Court stated that a pardon "carries an imputation of guilt; acceptance a confession of it." *Burdick v. United States*, 236 U.S. 79, 94, 35 S.Ct. 267, 59 L.Ed. 476 (1915).

The conflicting statements in *Garland* and *Burdick* never have been satisfactorily reconciled. A division of the court of appeals for this circuit has taken the position that *Garland*'s "expansive view of the effect of a pardon turned out to be dictum" because it was unnecessary to the decision in the case. *In re North*, 62 F.3d 1434, 1437 (D.C.Cir. 1994) (Opinion of the Division of the Court for the Purpose of Appointing Independent Counsels). After analyzing a number of Supreme Court decisions, the Division went on to state that "a pardon does not blot out guilt or expunge a judgment of conviction." *Id.*; *see Bjerkan v. United States*, 529 F.2d 125, 128 n. 2 (7th Cir.1975) ("A pardon does not 'blot out guilt' nor does it restore the offender to a state of innocence in the eye of the law as was suggested in *Ex Parte Garland*."); *In re Abrams*, 689 A.2d 6, 11–12 (D.C.), *cert. denied*, —— U.S. ——, 117 S.Ct. 2515, 138 L.Ed.2d 1017 (1997) (pardon removes *legal punishment* for offense but does not remove fact of wrongdoing). The most that can be said is that it is not clear whether the pardon granted to Dr. Mudd by President Johnson blots out the existence of guilt. The Court therefore concludes that the claims of Dr. Mudd are not moot.

### B.  Administrative Procedure Act Claim

#### 1.  Standard of Review

The Secretary of a military department, under procedures established by him and approved by the Secretary of Defense, and acting through boards of civilians of the executive part of that military department, may correct any military record of that department when he "considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a). The Army regulations implementing the statute provide for the estab-

lishment of an Army Board for Correction of Military Records, which is to consist of civilian officers or employees of the Department of the Army. 32 C.F.R. § 581.3(b). The ABCMR may deny relief if it determines that "insufficient relevant evidence has been presented," 32 C.F.R. § 581.3(c)(5)(ii). If the ABCMR determines that the application warrants a hearing, it must conduct a hearing and make written findings, conclusions and recommendations. 32 C.F.R. § 581.3(c)(5), (f)(1)(i)(c). The findings, conclusions and recommendation are forwarded to the Secretary of the Army, "who will direct such action in each case as he determines to be appropriate." 32 C.F.R. § 581.3(f)(2). In this case, the ABCMR held a hearing and unanimously recommended that Dr. Mudd's conviction be vacated. The Secretary, acting through Assistant Secretary Lister, refused to adopt the ABCMR's recommendation and denied relief.[7]

■ The Court must uphold the Secretary's decision to deny a petitioner's request to correct his military record unless petitioner can establish that the decision is either "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or not supported by substantial evidence in the record. 5 U.S.C. § 706(2)(A), (E); *see Frizelle v. Slater*, 111 F.3d 172, 176 (D.C.Cir. 1997); *Kreis v. Secretary of the Air Force*, 866 F.2d at 1514; *Miller v. Lehman*, 801 F.2d 492, 497 (D.C.Cir.1986) (Secretary is final decision maker for purposes of APA review).

■■ Since the statute authorizing the Secretary to correct military records gives the Secretary a great deal of discretion, the arbitrary and capricious standard is even more difficult to meet than in other agency review cases. *See Kreis v. Secretary of the Air Force*, 866 F.2d at 1514 ("[i]t is simply more difficult to say that the Secretary has acted arbitrarily if he is authorized to act 'when he considers it necessary to correct an error or remove an injustice' than it is if he is required to act whenever a court determines that certain objective conditions are met") (internal citations omitted); *Daleandro v. Dalton*, 948 F.Supp. 95, 97 (D.D.C.1996) (same). Despite the considerable deference accorded to the military in this area, a plaintiff can establish that the Secretary's decision making process was flawed and in violation of the APA by showing (1) that the Secretary did not consider or respond to an argument made by plaintiff that is not "frivolous on its face," or (2) that the basis of the Secretary's decision is not supported by evidence anywhere in the record. *See Frizelle v. Slater*, 111 F.3d at 176–78.

### 2. Assistant Secretary Lister's Decision

■ The final decision at issue in this case is Assistant Secretary Lister's letter of February 2, 1996, in which she refused to vacate Dr. Mudd's conviction. The Court concludes that her decision was (1) arbitrary and capricious because Dr. Mudd raised a non-frivolous argument that the Board apparently accepted but Assistant Secretary Lister did not address at all; and (2) unsupported by substantial evidence in the record because Assistant Secretary Lister based her decision at least in part on the assumption that Dr. Mudd had alternative methods of challenging the jurisdiction of the Hunter Commission, an incorrect assumption not supported by the record.[8]

### a. *Failure to Consider Dr. Mudd's Citizenship of a Non–Secessionist State*

■ Assistant Secretary Lister's decision was arbitrary and capricious because it failed

---

7. It is permissible for the Secretary to delegate his authority to an Assistant Secretary. *See Kreis v. Secretary of the Air Force*, 866 F.2d at 1509.

8. Dr. Mudd also argues that Assistant Secretary Lister improperly relied on memoranda prepared by Major Pamela Stahl (AR, Tab 26) and Brigadier General Harold Nelson (AR, Tab 25). Plaintiff's Motion at 38–40. While the statute requires the Secretary to "act[ ] through boards of civilians" when correcting military records, 10 U.S.C. § 1552(a), and the Secretary of the Army must independently consider the record and the recommendation of the ABCMR and may not rely *exclusively* on the recommendation of military officers, *see Weiss v. United States*, 187 Ct.Cl. 1, 408 F.2d 416, 421 (Cl.Ct.1969), the Secretary is not completely precluded from obtaining advice from a military officer. *See Crager v. United States*, 25 Cl.Ct. 400, 409 (Cl.Ct.1992). It does not appear that Assistant Secretary Lister improperly relied on either Major Stahl or Brigadier General Nelson. Her decision does not adopt wholesale the reasoning of either.

to address a seemingly meritorious argument raised by Dr. Richard Mudd with respect to the Hunter Commission's jurisdiction. Dr. Mudd argued that the Commission had no jurisdiction over Dr. Samuel Mudd because the civilian courts were open and because Dr. Mudd was a citizen of Maryland, a non-secessionist state. Both of these arguments were supported by evidence in the record, including the opinion of an expert. Both were apparently accepted by the ABCMR in concluding that the military tribunal had no jurisdiction over Dr. Mudd. Assistant Secretary Lister acknowledged the argument that the civilian courts were open, but she never addressed the argument that Dr. Mudd was a citizen of Maryland, a central feature of Dr. Mudd's jurisdictional argument. The failure to address the citizenship argument in her decision is arbitrary and capricious. *See Frizelle v. Slater*, 111 F.3d at 176 (Board's decision arbitrary where it failed to address two of petitioner's non-frivolous arguments); *Neal v. Secretary of the Navy*, 639 F.2d 1029, 1042 n. 13 (3rd Cir.1981) ("although the decision of the [Board for Correction of Naval Records] is in the form of a recommendation to the Secretary of the Navy ... he may not arbitrarily overrule the recommendations of the Board where its findings are justified by the record").

At the hearing before the ABCMR, Dr. Mudd presented expert testimony detailing the four situations in which the military has jurisdiction to exercise judicial-type authority. *See* AR, Tab 13 (Transcript of ABCMR Hearing) at 24–40. Dr. Jan Horbaly, an expert on court martial jurisdiction, testified that the military has the authority to exercise four types of jurisdiction: (1) "military justice" jurisdiction gives the military the authority to exercise jurisdiction over members of the military (for example, court martial proceedings); (2) "military government" jurisdiction authorizes the military to set up courts when the United States occupies a foreign country after a war and there is no longer a rule of law or domestic court system operating in that country (for example, Germany after World War II); (3) "martial law" jurisdiction authorizes the President to order the military to exercise the responsibilities of the legislature, the executive branch or the courts if any of those branches are unable to function because of war, insurrection or other disaster; and (4) "law of war" jurisdiction gives the military jurisdiction over those who do not abide by the internationally accepted rules of war—law of war gives the military jurisdiction primarily over "those who are enemy aliens to the United States, those who are viewed as unlawful belligerents, foreign nationals who really have no relationship whatever to the United States." *See id.* at 24, 33, 37.

In Dr. Mudd's case, the Hunter Commission clearly was not exercising military justice or military government jurisdiction. If it had jurisdiction over Dr. Mudd at all, it therefore must have been pursuant to either martial law or law of war jurisdiction. According to Dr. Horbaly's testimony, however, the Commission could not have been exercising martial law jurisdiction because the military only has martial law jurisdiction if the civilian courts are closed. *Id.* at 28–29. *See Ex Parte Milligan*, 71 U.S. at 127 (military not authorized to exercise martial law jurisdiction unless civil courts are effectively closed; "[m]artial law cannot arise from a *threatened* invasion. The necessity must be actual and present; the invasion real, such as effectually closes the courts and deposes the civil administration"). While Dr. Horbaly acknowledged that the District of Columbia was under "mild" martial law when Dr. Mudd was tried, it is undisputed that the civil courts were open. AR, Tab 13 (Transcript of ABCMR Hearing) at 28; AR, Tab 1 (Letter from Ms. Sara Lister, Asst. Sec'y of the Army) ("the ABCMR determined that conditions in Washington, DC, were such that Dr. Mudd *could* have been tried by civilian courts"). The military may have had martial law authority to perform the functions of the government that were not operational, such as police functions, but the Hunter Commission did not have martial law jurisdiction to try Dr. Mudd because the civil courts were open and operational. The ABCMR accepted this argument that the Commission lacked martial law jurisdiction. *See* AR, Tab 5 (ABCMR Record of Proceedings and Recommendation) at 12.

Dr. Horbaly also testified that he did not believe the Hunter Commission had law of war jurisdiction over Dr. Mudd. He testified that the requirements for law of war jurisdiction are either that: (1) the civilian courts are closed and an American civilian is charged with treason; or (2) a state of war exists and a non-citizen "belligerent" is accused of violating the accepted rules of war. AR, Tab 13 at 33, 37–38. Since there is no dispute that the civilian courts were open, *see supra* at 16–17, according to Dr. Horbaly's testimony the Commission would only have had law of war jurisdiction if there was a state of war and a *non-citizen* belligerent were charged with violating the accepted rules of war. Dr. Horbaly testified that if the civil courts are open and a *citizen* is charged with an offense as an "enem[y] of the nation," the United States Constitution provides the means by which that person should be tried: the citizen should be charged with treason in the civilian courts rather than being tried by military commission. *Id.* at 38. Dr. Mudd, a citizen of the United States and a citizen of Maryland, a state that had not seceded from the Union and was never at war with the Union, should have been tried in the civilian courts for treason rather than being the subject of "law of war" military jurisdiction. *Id.* at 37. The ABCMR agreed that the Hunter Commission did not have law of war jurisdiction over Dr. Mudd and appeared to implicitly accept the citizenship argument. *See* AR, Tab 5 (ABCMR Record of Proceedings and Recommendation) at 12.[9]

Assistant Secretary Lister apparently agreed with the ABCMR that the Hunter Commission did not have martial law jurisdiction over Dr. Mudd but rejected the ABCMR view that there was no law of war jurisdiction. First, she specifically noted in her February 2, 1996 letter that the "assassination was an offense against the law of war." *See* AR, Tab 1 (Letter from Ms. Sara Lister, Asst. Sec'y of the Army). Second, she relied heavily on Attorney General

Speed's Memorandum of July 1865 and Judge Boynton's 1868 opinion denying Dr. Mudd's habeas petition. Attorney General Speed clearly spoke in terms of law of war jurisdiction. *See* AR, Tab 18. While Judge Boynton did not use the words "law of war," he invoked the same images and rationale as were used by the Attorney General, and he distinguished the Hunter Commission from the military commission at issue in *Ex Parte Milligan* on the ground that the offense tried by the Hunter Commission was "a Military one." AR, Tab 21. Although Assistant Secretary Lister noted that the "city, throughout the course of the insurrection, was under a declared state of martial law and civil policing was conducted, for the most part, by soldiers," she did not suggest that the Hunter Commission was exercising martial law jurisdiction. Rather, she seemed only to have been buttressing her "law of war" jurisdiction rationale with the fact that the city was under siege and the military was performing police functions at the time Dr. Mudd was tried. *See* AR, Tab 1 (Letter from Sara Lister, Asst. Sec'y of the Army) ("[t]he assassination was an offense against the law of war").

In the course of concluding that the Hunter Commission properly exercised law of war jurisdiction, Assistant Secretary Lister found that a state of war existed at the time of Dr. Mudd's trial. While the ABCMR found, consistent with the historical fact, that General Lee had surrendered at Appomattox on April 9, 1865 and that there was "no evidence that the capital was 'under siege'" in the spring of 1865 when Dr. Mudd was tried, AR, Tab 5 (ABCMR Record of Proceedings and Recommendation) at 12, Assistant Secretary Lister's conclusion is supported ever so slightly by evidence in the record that the District of Columbia was under a "mild" form of martial law. AR, Tab 13 (Transcript of ABCMR Hearing) at 28. The Court therefore will not rest its conclusion that her decision was arbitrary and capricious on this finding.

9. While it is unclear whether the ABCMR based its finding that the Hunter Commission lacked law of war jurisdiction on the fact that Dr. Mudd was a citizen, the Board clearly found that "at the time that President Lincoln was assassinated,

Dr. Mudd was a civilian and a citizen of Maryland, a nonsecessionist state." AR, Tab 5 (ABCMR Record of Proceedings and Recommendation) at 12.

The fundamental problem with Assistant Secretary Lister's decision lies in the fact that she never addressed the argument that Dr. Mudd was a citizen of the United States and a citizen of Maryland, a non-secessionist state, and the expert testimony of Dr. Horbaly that the Hunter Commission therefore could not exercise law of war jurisdiction over Dr. Mudd. She never indicated whether or why she was not convinced that citizenship precludes law of war jurisdiction or whether she even considered Dr. Horbaly's testimony. Since Assistant Secretary Lister's decision to deny Dr. Mudd relief rested in large part on her finding that Judge Boynton and Attorney General Speed had correctly concluded that the Hunter Commission had law of war jurisdiction over Dr. Mudd, her failure to address Dr. Richard Mudd's law of war argument and the evidence he presented necessarily is arbitrary and capricious. *See Frizelle v. Slater,* 111 F.3d at 177 (because the Board did not respond to arguments that "do not appear frivolous on their face and could affect the Board's ultimate disposition, we conclude that the Board's decision was arbitrary").

### b. *Lack of Substantial Evidence in the Record*

Assistant Secretary Lister's decision also is unsupported by substantial evidence in the record because she appears to have based her decision, at least in part, on the premise that Dr. Samuel Mudd could have had the jurisdictional question decided over a century ago and failed to raise it. AR, Tab 1 (Letter from Ms. Sara Lister, Ass't Sec'y of the Army). She specifically noted that Dr. Mudd's "appeal of Judge Boynton's decision to the U.S. Supreme Court was not heard because of the pardon. At that time, he decided not to judicially challenge the jurisdiction again. For the sake of the law and history, his descendants must live with the ramifications of his decision." *Id.*

■■■ There is nothing in the administrative record to support Assistant Secretary Lister's conclusion that Dr. Samuel Mudd could have judicially challenged the jurisdiction of the Hunter Commission after he was pardoned by President Johnson. Moreover, her conclusion appears to be wrong as a matter of law. Approximately eighty-five years *after* Dr. Samuel Mudd was pardoned and "decided not to judicially challenge the jurisdiction again," the Supreme Court held that a writ of error coram nobis pursuant to the All Writs Act, 28 U.S.C. § 1651, was available to challenge the validity of a conviction after the sentence was fully served. *See United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954). Prior to the *Morgan* decision, however, there was a "difference of opinion" regarding whether the remedy was available to those whose sentences already had been completed, and it therefore appears likely that Dr. Mudd had no way to judicially challenge the jurisdiction of the Hunter Commission after he was pardoned. *See id.* at 509, 74 S.Ct. 247. Even if the writ had been available at the time to those who had already served their sentences, Dr. Mudd would have had difficulty seeking a writ because his petition for such a writ would have to have been addressed to the Hunter Commission, and the Commission ceased to exist after the trial of the conspirators. *See Baxter v. Claytor,* 652 F.2d 181, 184 (D.C.Cir.1981) ("A writ of error coram nobis corrects a mistake previously made by the court to which the petition for the writ is addressed").

All of the record evidence supports the conclusion that Dr. Mudd had no opportunity to have had the jurisdictional issue decided. Even Assistant Secretary Lister acknowledged that Dr. Mudd's appeal to the Supreme Court "was not heard because of the pardon." AR. Tab 1 (Letter from Ms. Sara Lister, Ass't Sec'y of the Army). To the extent that Assistant Secretary Lister based her denial of relief on her conclusion that Dr. Mudd *"decided* not to judicially challenge the jurisdiction again," AR, Tab 1 (emphasis added), that conclusion has no support in the record, and the decision therefore must be reversed. *See Frizelle v. Slater,* 111 F.3d at 178.

No one can change history. No one can undo what has been done. But where the Secretary of the Army endeavors to finally resolve a matter of historical record and to determine whether there was error or injustice, he may not do so in a manner that is arbitrary and capricious or unsupported by

the record. The decision of the Army therefore will be vacated and the case remanded for reconsideration of Dr. Richard Mudd's petition. An Order and Judgment consistent with this Opinion shall be issued this same day.

SO ORDERED.

### ORDER AND JUDGMENT

For the reasons stated in the Opinion issued this same day, it is hereby

ORDERED that plaintiff's motion for summary judgment is GRANTED with respect to Count I and DENIED with respect to Counts II and III; it is

FURTHER ORDERED that defendants' motion for summary judgment is GRANTED with respect to Counts II and III and DENIED with respect to Count I; it is

FURTHER ORDERED that JUDGMENT is entered for plaintiff on Count I and Counts II and III are DISMISSED; it is

FURTHER ORDERED that the decision of the Secretary of the Army is VACATED; and it is

FURTHER ORDERED that this case is REMANDED to the Secretary of the Army for proceedings not inconsistent with this Opinion and Order.

SO ORDERED.