Thomas B. **MUDD, Son of Richard D. Mudd and great-grandson of Samuel A. Mudd, as heir and successor to Samuel A. Mudd, deceased, Appellant,**

v.

**Thomas A. WHITE, Secretary of the Army, et al., Appellees.**

**No. 01–5103.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 3, 2002.

Decided Nov. 8, 2002.

R. Craig Lawrence, Assistant United States Attorney, argued the cause for appellees. With him on the briefs were Roscoe C. Howard Jr., United States Attorney, Wyneva Johnson, Assistant United States Attorney, and James R. Agar II, Attorney, Office of the Judge Advocate General.

Before: EDWARDS and ROGERS, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

HARRY T. EDWARDS, Circuit Judge:

The appellant, Thomas B. Mudd,* whose great-grandfather, Dr. Samuel Mudd, was convicted by a military tribunal for his alleged role in the assassination of President Abraham Lincoln, seeks judicial review of the Army's refusal to reverse that conviction more than a century later. Appellant bases his claim on 10 U.S.C. § 1552(a)(1) (2002), pursuant to which "[t]he Secretary of a military department may correct any military record ... when the Secretary considers it necessary to correct an error or remove an injustice." The Army Board for Correction of Military Records ("ABCMR"), upon reviewing appellant's application, recommended that Dr. Samuel Mudd's conviction before a military commission be set aside. The Assistant Secretary of the Army (the "Secretary"), however, denied appellant's request for relief. Appellant then filed suit in the District Court, claiming that the action of the Secretary was arbitrary and capricious under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1)(A) (2002). The District Court heard the case twice, *see Mudd v. Caldera*, 134 F.Supp.2d

Philip A. Gagner argued the cause and filed the briefs for appellant.

* Richard D. Mudd, the original complainant in this case, passed away earlier this year, leaving his son – the great-grandson of Dr. Samuel Mudd – to pursue this appeal. *See Richard D. Mudd, 101 Grandson of Booth Doctor,* WASH. POST, May 22, 2002, at B07.

138 (D.D.C.2001) ("*Mudd II*"); *Mudd v. Caldera*, 26 F.Supp.2d 113 (D.D.C.1998) ("*Mudd I*"), ultimately finding that the Secretary's decision was not arbitrary, capricious, or otherwise in violation of law. The District Court therefore granted summary judgment for the Army. *Mudd II*, 134 F.Supp.2d at 147.

We agree that appellant cannot prevail on his claim. But we rely on different grounds than those advanced by the District Court. In our view, appellant's claim must be dismissed for want of standing. Under 10 U.S.C. § 1552(g), "military record" pertains only to "an individual member or former member of the armed forces." Dr. Samuel Mudd was never a member of the armed forces. Therefore, even if appellant can establish Article III standing, his action must be still dismissed for want of prudential standing. Appellant's interest in correcting the military record that relates to his great-grandfather's conviction is not within the "zone of interests" protected by the statute covering the correction of military records.

## I. BACKGROUND

The factual and procedural history in this case are recounted fully and thoughtfully in the District Court's opinions in *Mudd I* and *Mudd II*. We will thus not repeat the extensive details of the actions before ABCMR, the Secretary, or the District Court. Rather, we will focus on the portions of the record that are most pertinent to this appeal.

On May 9, 1865, a special military tribunal charged eight parties with conspiring to murder President Abraham Lincoln. One of these individuals was Dr. Samuel Mudd ("Dr. Mudd"), a non-military physician who owned a tobacco farm in Charles County, Maryland. *Mudd II*, 134 F.Supp.2d at 140; *Mudd I*, 26 F.Supp.2d at 116. Dr. Mudd was visited by John Wilkes Booth and an accomplice following the well-known events at Ford's Theater on April 14, 1865. After fatally wounding President Lincoln on that evening, Booth stopped at Dr. Mudd's farm – possibly in disguise – to receive medical treatment for an injury that he sustained during the escape. *Id.* Dr. Mudd told others about this encounter, and authorities soon thereafter arrested him for assisting in the infamous assassin's flight.

President Andrew Johnson convened a special military tribunal to try all cases having to do with the plot to kill President Lincoln. Known as the Hunter Commission, the nine appointed members of this body considered the evidence on the charges against Dr. Mudd. *Id.* Attorney General James Speed announced his opinion that a military court could preside over these hearings because the object of the conspiracy was the murder of President Lincoln, who acted as commander in chief. *See* 12 Op. Att'y Gen. 297-317 (1865), *reprinted in* Joint Appendix ("J.A.") 19-25.

In his defense, Dr. Mudd argued that allowing the Commission to assert jurisdiction over his case was unlawful. *Mudd I*, 26 F.Supp.2d at 116. He reasoned that a non-military citizen was entitled to adjudication in the civilian courts during peace time. Since the state of Maryland was not part of the Confederacy and local civilian courts remained open, a military tribunal had no power to try the case. The Hunter Commission rejected this argument, issued a final judgment against Dr. Mudd, and then sentenced him to life imprisonment. *Id.*

During his incarceration, Dr. Mudd petitioned the federal courts for habeas relief. *See Mudd II*, 134 F.Supp.2d at 140; *Mudd I*, 26 F.Supp.2d at 117; *see also Ex Parte Mudd*, 17 F. Cas. 954 (S.D.Fla.1868), *reprinted in* J.A. 41-43. Dr. Mudd relied on the Supreme Court's holding in *Ex Parte Milligan*, 71 U.S. (4 Wall.) 2, 18 L.Ed. 281

(1866), a case adopting a limited view of a military tribunal's jurisdiction over civilians from nonsecessionist states. *See also Ex Parte Quirin*, 317 U.S. 1, 63 S.Ct. 2, 87 L.Ed. 3 (1942). The District judge rejected these arguments and denied the habeas petition. J.A. 43. An appeal of that ruling on the merits never occurred due to intervening events leading to Dr. Mudd's release from prison. On February 8, 1869, President Andrew Johnson issued a full and unconditional pardon to Dr. Mudd in recognition of his efforts to assist medical officers during an epidemic of yellow fever. *See* Pres. Pardon of Samuel A. Mudd, *reprinted in* J.A. 44-48; *Mudd I*, 26 F.Supp.2d at 117; *see also* Mudd Compl. at ¶ 26.

More than a century later, Richard D. Mudd, Dr. Samuel Mudd's grandson, filed a formal petition with the Army to overturn the judgment of the Hunter Commission. *Mudd II*, 134 F.Supp.2d at 140; *Mudd I*, 26 F.Supp.2d at 117. Richard Mudd based his claim solely on 10 U.S.C. § 1552(a)(1), pursuant to which "[t]he Secretary of a military department may correct any military record ... when the Secretary considers it necessary to correct an error or remove an injustice." He asked the Army to expunge the official documents relating to his grandfather's conviction. He specifically argued that the judgment of the Hunter Commission was invalid, because his grandfather was factually innocent of the conspiracy charge and because a military tribunal had no jurisdiction to try civilians during times of peace. *Mudd II*, 134 F.Supp.2d at 140; *Mudd I*, 26F.Supp.2d at 117.

ABCMR conducted a hearing on the petition and determined that circumstances warranted a reversal of Dr. Mudd's conviction on the ground that the Hunter Commission's jurisdiction did not extend to noncombatant civilians like Dr. Mudd. *Mudd I*, 26 F.Supp.2d at 122. On

January 22, 1992, ABCMR recommended that the Secretary of the Army alter the necessary records and void the 19th Century conviction. *Id.*

The Secretary rejected ABCMR's recommendation and declined to alter the records relating to Dr. Mudd's conviction. *Mudd II* 134 F.Supp.2d at 141. Following a remand from the District Court to conduct additional administrative proceedings, *see Mudd I*, 26 F.Supp.2d at 120, the Secretary held steadfast to the view that the Hunter Commission acted within its lawful jurisdiction in convicting Dr. Mudd. *Mudd II*, 134 F.Supp.2d at 142. The Secretary reasoned that John Wilkes Booth was an unlawful belligerent who had committed the Lincoln assassination as an act of war. Therefore, according to the Secretary, the military tribunal's power to try Dr. Mudd was appropriate because the laws of war applied to all parts of the underlying conspiracy. *Id.*

Richard Mudd then sought judicial review in District Court, claiming that the Secretary's action in denying relief under 10 U.S.C. § 1552(a)(1) was arbitrary and capricious under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1)(A). On March 14, 2001, the District Court granted summary judgment in favor of the Army. *Mudd II*, 134 F.Supp.2d at 147-48. The trial judge found that the Army reached its decision after properly weighing the evidence presented in favor of reversing the conviction. *Id.* at 143-44. The District Court also found that the Secretary's application of the "law of war" principle instead of the martial law principle found in *Milligan* was not arbitrary, capricious, or contrary to law. *Id.* at 146-47. Appellant then sought review in this court.

Richard D. Mudd died earlier this year, leaving his son – the great-grandson of Dr. Mudd – to pursue this appeal. On August 20, 2002, after the initial submission of

briefs, the court directed the parties to provide supplemental briefing on the issue as to whether appellant lacked standing to seek judicial relief in federal court. *See Mudd v. White*, No.01-5103 (D.C.Cir. Aug. 20, 2002) (Order).

## II. ANALYSIS

Most of the oral argument before this court focused on appellant's standing to sue. Because standing is a threshold requirement, and because (as we explain below) appellant has failed to demonstrate standing in this case, this will be the sole focus of our decision.

There are two principal forms of standing: "Article III (case or controversy)" and "prudential." The former, which is jurisdictional and cannot be modified by Congress, entails three requirements:

First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.' " Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (citations omitted).

■ Prudential standing "denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399, 107 S.Ct. 750, 757, 93 L.Ed.2d 757 (1987). The Court has amplified the doctrine, as follows:

In addition to the immutable requirements of Article III, "the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." Like their constitutional counterparts, these "judicially self-imposed limits on the exercise of federal jurisdiction" are "founded in concern about the proper—and properly limited—role of the courts in a democratic society"; but unlike their constitutional counterparts, they can be modified or abrogated by Congress. Numbered among these prudential requirements is the doctrine of particular concern in this case: that a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statutory provision or constitutional guarantee invoked in the suit.

*Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 1161, 137 L.Ed.2d 281 (1997) (citations omitted).

■ The Government argues strenuously that appellant cannot satisfy the "case" or "controversy" requirements of Article III, because he has not demonstrated that his alleged injury is fairly traceable to the actions of the Secretary, or that the alleged injury will likely be redressed by a decision from this court ordering the Army to correct its records. In particular, the Government argues that the reputational injury alleged by appellant is more likely

the result of the ravages of history than of any official decision by the Secretary. The Government also contends that an action by the Army to change its records will not remedy the alleged reputational harm suffered by appellant. We need not address these arguments, however, because we find that appellant's claim assuredly fails for want of prudential standing.

Appellant's insurmountable problem in this case is that his claim, resting on 10 U.S.C. § 1552(a)(1), is not "arguably within the zone of interests to be protected or regulated by the statute ... in question." *Ass'n of Data Processing Serv. Orgs. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). The "zone of interests" requirement has neither been eliminated nor adjusted by Congress with respect to the coverage of claims arising under 10 U.S.C. § 1552(a)(1). Therefore, appellant must show that his asserted interest is among the group of claims that is envisioned by the relevant statute. *See Sierra Club v. EPA,* 292 F.3d 895, 902 (D.C.Cir.2002); *Cement Kiln Recycling Coalition v. EPA,* 255 F.3d 855, 870 (D.C.Cir.2001). He fails this test if his interests are so marginally related to or inconsistent with the implicit purposes in the statute "that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke v. Sec. Indus. Ass'n,* 479 U.S. at 399, 107 S.Ct. at 757; *see also Scheduled Airlines Traffic Offices, Inc. v. Dep't of Def.,* 87 F.3d 1356, 1359 (D.C.Cir. 1996).

In this case, appellant asserts an interest in correcting records to vacate the criminal conviction of his great-grandfather. The applicable federal statute that gives rise to appellant's claim was last amended by Congress before the present lawsuit was initiated. *Compare* 10 U.S.C. § 1552 (1998) (amending subsection (g)), *with Mudd I,* 134 F.Supp.2d at 140 (noting Army's final denial of Richard Mudd's petition on Mar. 6, 2000). The amended subsection 1552(g) defines a "military record" as a document that "pertains to (1) an individual member or former member of the armed forces, or (2) ... any other military matter affecting a member or former member of the armed forces...." 10 U.S.C. § 1552(g). And 10 U.S.C. § 1552(b) makes it clear that only a "claimant or his heir or legal representative" may file a petition under § 1552(a) to correct a "military record." *See also* 32 C.F.R. § 581.3(d)(1)(iii) (2002). Therefore, the statute plainly contemplates that only the claimant member of the armed forces (or his heir or legal representative) may seek to alter a "military record" pertaining to the claimant. We assume *arguendo* that Dr. Mudd's grandson and great-grandson indeed qualify as heirs or legal representatives. However, as Dr. Mudd was not a "member or former member of the armed forces," neither the grandson nor the great-grandson is an heir or legal representative of the type of "claimant" contemplated by the statute. In other words, their petition does not pertain to "a member or former member of the armed services." Appellant is thus not within the "zone of interests" protected or regulated by the statute.

### III. Conclusion

For the reasons enumerated above, the appeal is denied and the case is dismissed.