Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued January 17, 2003          Decided February 21, 2003

No. 01-5417

AMERICAN FEDERATION OF GOVERNMENT EMPLOYEES,
AFL-CIO, ET AL.,
APPELLANTS

v.

DONALD H. RUMSFELD, SECRETARY OF THE
UNITED STATES DEPARTMENT OF DEFENSE, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 00cv03001)

———

*Sandra Sue Adams-Choate* argued the cause for appellants. With her on the briefs was *Mark Roth*. *Charles A. Hobbie* entered an appearance.

*Joel E. Wilson*, Special Assistant United States Attorney, argued the cause for appellees. With him on the brief were

———

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Roscoe C. Howard, Jr.*, United States Attorney, and *R. Craig Lawrence*, Assistant United States Attorney. *Thomas M. Ray*, Assistant United States Attorney, entered an appearance.

Before: EDWARDS and SENTELLE, *Circuit Judges,* and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* EDWARDS.

EDWARDS, *Circuit Judge*: Appellants American Federation of Government Employees, AFL-CIO, *et al.*, appeal from a judgment of the District Court dismissing their claims that the Redstone Arsenal Army installation has failed to adhere to instructions, directives, and regulations promulgated by the Department of Defense ("DOD"), Department of the Army ("Army"), and Office of Personnel Management ("OPM"), pursuant to the Occupational Safety and Health Act ("OSHA"), 29 U.S.C. §§ 651-678. The District Court held that appellants lacked standing, and that their claims were not ripe for review. *See Am. Fed'n of Gov't Employees v. Rumsfeld*, No. 00-3001 (D.D.C. Oct. 25, 2001), Joint Appendix ("J.A.") 7. Appellees also urge that appellants' claims are precluded by the Civil Service Reform Act, Pub. L. No. 95–454, 92 Stat. 1111 (codified in scattered sections of 5 U.S.C.). Because we hold that appellants' action fails for want of prudential standing, we do not reach the ripeness and statutory preclusion issues.

## I. BACKGROUND

### A. Statutory and Regulatory Background

OSHA requires heads of federal agencies to "establish and maintain an effective and comprehensive safety and health program." 29 U.S.C. § 668(a). In compliance with this statutory provision, DOD, Army, and OPM have implemented various directives, instructions, and regulations. For example, DOD Directive 1000.3, J.A. 33-36, mandates, *inter alia*, that the military service components, including the Department of the Army, implement "[c]omprehensive programs . . . to . . . [p]rotect DoD personnel from accidental death, injury,

or occupational illness," *id.* § 3.1, J.A. 34. Pursuant to this directive, DOD has issued Instruction 6055.1, J.A. 59-103, which establishes the Department's occupational safety and health program. The safety and health program applies to "all DoD personnel and operations worldwide during peacetime and military deployments." *Id.* § 2.2, J.A. 60.

Instruction 6055.6 of DOD's program outlines policies related to fire prevention and suppression, training, fire apparatus, fire administration, emergency medical response, rescue, and hazardous emergency response. *See* J.A. 37-58. The policies mandate that fire departments on military installations "shall be prepared . . . to respond . . . to emergencies involving facilities, structures, aircraft, transportation equipment, hazardous materials, and both natural and man-made disasters (including acts of terrorism)." *Id.* § E2.5.2, J.A. 46. In particular, the Instruction requires that every installation complete a comprehensive analysis of all structures located within its boundaries in order to assess how much "fire flow" (water pumped at x gallons per minute) is necessary to mitigate damages and loss. *Id.* § E2.5.6, J.A. 47. The installation must then gather and examine data relating to the time and distance required for a single piece of apparatus to respond to a fire or other emergency at each structure on the installation. *Id.* § E2.5.3, J.A. 46. Based on this analysis, the installation determines the number and location of fire companies needed to comply with DOD's directive and instructions to insure that individuals are adequately protected from fire and other emergencies.

Army Regulation ("AR") 420-90 was issued by Army to implement DOD Instruction 6055.6. *See* J.A. 105-36. The provisions of AR 420-90 are substantively the same as those in DOD Instruction 6055.6 with respect to the issues raised by appellants.

Also at issue in this case are regulations promulgated by OPM concerning the appointment of nonpermanent employees ("term employees") by agencies. *See* 5 C.F.R. § 316.301-.304; 5 C.F.R. § 316.401-.403. These regulations were promulgated pursuant to 5 U.S.C. §§ 3301-3302.

4

## B. Procedural History

Appellants are unincorporated labor unions and individuals who are employed at Redstone Arsenal, an Army installation located near Huntsville, Alabama. Redstone Arsenal consists of more than 12 million square feet of buildings. Its tenant, the National Aeronautics and Space Administration's Marshall Space Flight Center, occupies an additional four million square feet of building space. Appellants assert that many of the structures at Redstone Arsenal are deemed extra hazardous because they house numerous fuels, hydraulic fluid, motorized missile launchers, explosives, radiation hazards, and a variety of hazardous and/or explosive chemicals.

Appellants allege that Redstone Arsenal is not in compliance with the applicable health and safety instructions, directives, and regulations. In particular, they argue that Redstone Arsenal has failed to comply with the risk analysis mandated by DOD Instruction 6055.6 and AR 420-90. Appellants contend that Redstone Arsenal's risk analysis concluded that the installation needed five fire companies, and that five companies require 55 firefighters plus additional administrative and supervisory staff. Redstone Arsenal currently maintains only three fire companies, and appellants claim that those three companies are not fully staffed.

Additionally, some of the firefighter positions are staffed by term employees, many of whom appellants allege do not meet the basic requirements for federal firefighters employed by DOD. Appellants claim that this use of term employees is contrary to the intent of OPM's regulations. They contend that "[w]hen a portion of the team is employed for a limited period of time and the make-up of the team thereby is constantly changing, not only is its effectiveness diminished but the permanent firefighter employees are at risk in the performance of their job . . . ." Br. of Appellants at 5.

Because of these perceived regulatory violations, the American Federation of Government Employees, Local 1858, filed an Unfair Labor Practice Charge against Redstone Arsenal on June 4, 1998. On February 26, 1999, the Regional Director of the Federal Labor Relations Authority ("FLRA")

declined to issue a complaint. The union appealed to the FLRA and, on June 29, 1999, the FLRA affirmed the Regional Director's decision.

Thereafter, appellants brought suit in District Court. They sought an order requiring appellees at Redstone Arsenal to comply with DOD Instruction 6055.6 and AR 420-90, and directing the Army to staff Redstone Arsenal's fire department with permanent, rather than term, employees. Appellees moved to dismiss, and the District Court granted their motion on October 26, 2001. The court held that appellants lacked standing and that, in any event, the case was not ripe for review. *See Am. Fed'n of Gov't Employees*, No. 00-3001, J.A. 7. This appeal followed.

## II. ANALYSIS

Because appellants lack prudential standing, we affirm the judgment of the District Court. We review the dismissal of appellants' claims *de novo*, *Sloan v. United States Dep't of Housing & Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001), and " 'accept as true all material allegations in the complaint.' " *Action for Children's Television v. FCC*, 59 F.3d 1249, 1258 (D.C. Cir. 1995) (quoting *Metro. Washington Airports Auth. v. Citizens for the Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 264 (1991)).

The Supreme Court has enunciated two principal forms of standing: "Article III (case or controversy)" and "prudential." *See Mudd v. White*, 309 F.3d 819, 823 (D.C. Cir. 2002) (explaining the separate categories of constitutional and prudential requirements). Prudential standing, unlike Article III standing, is "based not on the Constitution, but instead on prudent judicial administration." ERWIN CHEMERINSKY, FEDERAL JURISDICTION 60 (3d ed. 1999).

> In *Mudd*, we recently explained the differences between these standing doctrines:
>
> [Article III standing], which is jurisdictional and cannot be modified by Congress, entails three requirements:

6

First, the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (citations omitted).

Prudential standing "denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399, 107 S. Ct. 750, 757, 93 L.Ed.2d 757 (1987). The Court has amplified the doctrine, as follows:

In addition to the immutable requirements of Article III, "the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." Like their constitutional counterparts, these "judicially self-

imposed limits on the exercise of federal juris-diction" are "founded in concern about the prop-er—and properly limited—role of the courts in a democratic society"; but unlike their constitu-tional counterparts, they can be modified or abrogated by Congress. Numbered among these prudential requirements is the doctrine of particular concern in this case: that a plaintiff's grievance must arguably fall within the zone of interests protected or regulated by the statuto-ry provision or constitutional guarantee invoked in the suit.

*Bennett v. Spear*, 520 U.S. 154, 162, 117 S. Ct. 1154, 1161, 137 L.Ed.2d 281 (1997) (citations omitted).

*Mudd*, 309 F.3d at 823.

Appellants have an insurmountable hurdle with respect to their OSHA claims: their claims, resting on 29 U.S.C. § 668, are not "arguably within the zone of interests to be protected or regulated by the statute . . . in question." *Ass'n of Data Processing Serv. Orgs. v. Camp*, 397 U.S. 150, 153 (1970). Because Congress has neither modified nor eliminated the "zone of interests" requirement with respect to claims arising under § 668, "appellant[s] must show that [their] asserted interest is among the group of claims that is envisioned by the relevant statute." *Mudd*, 309 F.3d at 824; *see also Cement Kiln Recycling Coalition v. EPA*, 255 F.3d 855, 870-71 (D.C. Cir. 2001). "[They] fail[ ] this test if [their] interests are so marginally related to or inconsistent with the implicit purposes in the statute 'that it cannot reasonably be assumed that Congress intended to permit the suit.' " *Mudd*, 309 F.3d at 824 (quoting *Clarke v. Sec. Indus. Ass'n*, 479 U.S. at 399). Here, it cannot reasonably be inferred that Congress intend-ed to permit this law suit under OSHA, because appellants have no basis upon which to rest a private right of action under OSHA. *See Mudd*, 309 F.3d at 824 (finding that the plaintiff lacked prudential standing because he had no private cause of action under the relevant statute).

OSHA provides:

> Nothing in this chapter shall be construed to supersede or in any manner affect any workmen's compensation law or to enlarge or diminish or *affect in any manner the common law or statutory rights, duties, or liabilities of employers and employees under any law* with respect to injuries, diseases, or death of employees arising out of, or in the course of, employment.

29 U.S.C. § 653(b)(4) (emphasis added). Pursuant to this provision, it is now well established that "OSHA violations do not themselves constitute a private cause of action for breach." *Crane v. Conoco, Inc.*, 41 F.3d 547, 553 (9th Cir. 1994); *see also United Steelworkers of Am. v. Marshall*, 647 F.2d 1189, 1235-36 (D.C. Cir. 1980); *Ries v. Nat'l R.R. Passenger Corp.*, 960 F.2d 1156, 1164 (3d Cir. 1992); *Jeter v. St. Regis Paper Co.*, 507 F.2d 973, 976-77 (5th Cir. 1975); *Byrd v. Fieldcrest Mills, Inc.*, 496 F.2d 1323, 1323 (4th Cir. 1974) (per curiam); *Russell v. Bartley*, 494 F.2d 334, 336 (6th Cir. 1974). Moreover, this court has affirmed a judgment rejecting private rights of action under OSHA against federal employers. *See Fed. Employees for Non-Smokers' Rights v. United States*, 446 F. Supp. 181, 183 (D.D.C. 1978), *aff'd*, 598 F.2d 310 (D.C. Cir. 1979). The District Court's opinion in that case offered reasoning that is perfectly on point here:

> [T]he enforcement scheme of the OSH Act further indicates the congressional intent not to allow employees to bring an action against a federal agency as an employer. The Act establishes an elaborate enforcement procedure in 29 U.S.C. § 659 that the Secretary of Labor may use against an "employer." However, the term "employer" does not include the United States. 29 U.S.C. § 652(5). Therefore, although 29 U.S.C. § 668(a) does require federal agencies to "provide safe and healthful places and conditions of employment," the Act confers no authority upon the Secretary to take enforcement action against federal agencies. The reason for this is that the federal agency area is one "in which ordinary enforcement and penalty provisions are hardly appli-

> cable." H.R. Rep. No. 90-1720, 90th Cong., 2d Sess. 20 (1968). If Congress did not intend the Secretary of Labor to enforce the OSH Act against federal agencies, then, *a fortiori*, Congress did not intend private litigants to enforce the OSH Act against federal agencies. Accordingly, the Court finds that the OSH Act does not create a private right of action against federal agencies.

446 F. Supp. at 183.

Nor does 5 U.S.C. §§ 3301-3302, pursuant to which the OPM regulations were enacted, place appellants within "the group of claims that is envisioned by [a] relevant statute." There is simply no reason to believe that Congress intended that federal employees who have been hired and treated lawfully would be entitled to sue over the *procedures used to hire coworkers*. The plain language of these statutory provisions does not at all suggest such a cause of action. *See id.* § 3301 (providing that the President may "prescribe such regulations for the admission of individuals into the civil service in the executive branch as will best promote the efficiency of that service"); § 3302 (authorizing the President to "prescribe rules governing the competitive service"). In short, appellants have failed to demonstrate that Congress, through 5 U.S.C. §§ 3301-3302, or any other statutory enactment, intended to confer rights on federal employees authorizing them to contest decisions regarding the appointment of term employees. The cited statutory provisions were merely intended to facilitate the streamlining of the civil service appointment system, not to protect individual employees from comparatively less well trained and less experienced term employees.

Appellants try to overcome the legal hurdles to standing by arguing that this suit arises under § 702 of the Administrative Procedure Act, *see* 5 U.S.C. § 702, not OSHA or 5 U.S.C. §§ 3301-3302. Section 702 provides standing to "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." Appellants argue that this provision

allows them to sue appellees for violations of DOD Instruction 6055.6, AR 420-90, and the OPM regulations governing term employees. This argument fails, because appellants have no private right of action under the "relevant statute," *i.e.*, OSHA. As we noted in *National Federation of Government Employees v. Cheney*, 883 F.2d 1038 (1989):

> The issue is *not* whether appellants' interests are within the zone of interest of [an] OMB Circular . . .; section 702 clearly requires that the party seeking relief be "legal[ly] wrong[ed] . . . , or adversely affected or aggrieved . . . within the meaning of a *relevant statute*." 5 U.S.C. § 702 (emphasis added). The Circular is not a statute, *see, e.g.*, Ketler, *Federal Employee Challenges to Contracting Out: Is There a Viable Forum?*, 111 MILITARY L.REV. 103, 110 (1986) ("Circular A-76 promulgates executive branch managerial policy"), and, although promulgated pursuant to congressional authority, the Circular itself cannot grant standing.

*Id.* at 1043. The instructions, directives, and regulations at issue here are not statutes, and thus cannot confer standing upon appellants.

## III. CONCLUSION

For the foregoing reasons, the judgment of the District Court is affirmed.