**Brian J. VERPLANCK, Plaintiff,**

v.

**Gordon R. ENGLAND, Secretary of the Navy, Defendant.**

**No. CIV.A. 01–1100 RBW.**

United States District Court, District of Columbia.

April 9, 2003.

---

Charles W. Gittins, Middletown, VA, for Plaintiff.

Fred E. Haynes, Esq., Assistant United States Attorney, Washington, DC, for Defendant.

## MEMORANDUM OPINION

WALTON, District Judge.

This matter is before the Court on Defendant's Motion to Dismiss or in the alternative, for Summary Judgment ("Def.'s Mot.") and Plaintiff's Cross–Motion for Summary Judgment. The plaintiff's complaint arises from his involuntary separation from the United States Naval Acade-my ("Academy") and the Secretary of the Navy's ("Secretary") decision requiring the plaintiff to reimburse the United States $94,555.10 for his Academy educational expenses pursuant to 10 U.S.C. § 2005 (2000). Following the denial of the relief requested by the plaintiff by the Board for Correction of Naval Records' ("BCNR"),[1] the plaintiff initiated this action which challenges the reimbursement obligation because the Secretary failed to advise him of this statutory obligation, 10 U.S.C. § 2005(g)(2), and to cause an investigation to be conducted regarding the validity of the debt, 10 U.S.C. § 2005(g)(1). The defendant acknowledges that it failed to comply with this statute in both respects, but claims that the omissions amount to harmless error because the plaintiff knew about this reimbursement obligation and an investigation was unnecessary because this debt is valid. For the reasons set forth below, the Court finds it appropriate to remand this case to the Secretary so that an investigation is conducted pursuant to § 2005(g)(1), during which the official investigating the validity of the debt may consider the effect, if any, the Academy's failure to advise the plaintiff of the reimbursement obligation of § 2005(g)(2) has on the plaintiff's obligation to make the reimbursement.[2]

1. The Secretary is authorized to correct military records when "he considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a). "This correction process is undertaken by 'boards of civilians of the executive part of [the] military department [involved].' " *Smith v. Dalton*, 927 F.Supp. 1, 6 (D.D.C.1996) (quoting 10 U.S.C. § 1552(a)). In the instant case, the civilian board is referred to as the Board for Correction of Naval Records ("BCNR").

2. In addition, the Court notes that the plaintiff's complaint also contains two separate claims regarding the Academy's purported failure to give the plaintiff Article 31 warnings prior to the statements he made to Academy officials. *See* 10 U.S.C. § 831 (2002). However, the plaintiff concedes that the defendant is entitled to summary judgment on these claims. *See* Plaintiff's Opposition to Defendant's Motion for Summary Judgment and Memorandum in Support of Plaintiff's Cross–Motion for Summary Judgment ("Pl.'s Opp'n") at 10 n. 1 ("Plaintiff does not object to the court granting summary judgment to defendant on Count I and Count III of the Complaint."). Summary judgment on these claims will therefore be issued in defendant's favor.

## I. *Background*

A brief recitation of the facts of this case, including plaintiff's alleged misconduct, the Naval Academy's separation proceedings, the Deputy Assistant Judge Advocate General for Administrative Law (DAJAG) Advisory Opinion, and the BCNR decision will precede the Court's analysis of the legal challenges raised in the parties' papers.

### (A) *The Alleged Misconduct*

Plaintiff Brian VerPlanck was admitted to the Academy in July of 1994. Administrative Record ("A.R.") at 0024. Prior to beginning his studies at the Academy, the plaintiff signed a written agreement promising to successfully complete the Academy's course of instruction, to accept appointment as a commissioned officer upon graduation, and to serve a minimum of six years of active duty thereafter. *Id.* at 0125 ¶ I.A. The plaintiff also expressly agreed that if he failed to fulfill this service obligation he would reimburse the United States government for the cost of the education he received at the Academy at a rate determined by the Navy. *Id.* at 0125 ¶ I.B. On August 20, 1996, immediately prior to beginning his third-year of study, the plaintiff signed a statement which contained the same terms as the 1994 agreement just discussed above, including the fact that he would incur an enlisted service obligation if he continued his studies at the Naval Academy. *Id.* at 0127. The 1996 document also explained that the plaintiff could be required to fulfill this obligation for several reasons, including if he was involuntarily separated from the Academy for "academic deficiency, unsatisfactory conduct (including Honor Concept violations), [or] inaptitude..." *Id.*

On September 30, 1996, the plaintiff completed a Pre–Commissioning Physical and, as a result of his vision testing 20/40 in each eye, he was disqualified from becoming a Student Naval Aviator. Complaint ("Compl.") ¶ 7; A.R. at 0025. In order to improve his vision, the plaintiff obtained corrective contact lenses, *i.e.*, Orthokeratology lenses ("Ortho–K lenses"), from a civilian physician while on leave in December of 1996. Compl. ¶ 8; A.R. at 0025. The use of Ortho–K lenses "is a method of improving unaided vision by molding the cornea with contact lenses." A.R. at 0004, 0026. After wearing these lenses intermittently between the period of December 1996 to July 1997, the plaintiff advised an optometrist at the Academy in January 1998 that he had passed an Aviation Vision Retest, but that his medical records had not been corrected to reflect this change. Defendant's Statement of Material Facts As To Which There is No Genuine Dispute ("Def.'s Facts") at ¶¶ 11–12. A retest conducted on January 8, 1998, resulted in a finding that plaintiff's visual acuity in both eyes was 20/20. Compl. ¶ 11; A.R. at 0025. Another corneal topography was also performed at this same time, which indicated the possible use of Ortho–K lenses, which the plaintiff denied having ever worn. Def.'s Facts at ¶¶ 14–15; A.R. at 0026, 0208 ¶ 6. The doctor became suspicious about the plaintiff's denial that he had never worn Ortho–K lenses and asked the plaintiff to write a statement at the bottom of the vision retest describing any previous use of contact lenses or any form of corneal surgery. A.R. at 0004. The plaintiff made a statement that he had not used contact lenses since "July 1997." *Id.* at 0004–5. Following a review of plaintiff's medical records, the Naval Aerospace Medical Institute (NAMI) in Pensacola, Florida requested that plaintiff be retested a third time at the Bethesda Naval Hospital in Maryland. *Id.* at 0200. When plaintiff was informed about the retest, he approached his company officer and confessed to having lied

about his use of contact lenses. *Id.* at 0026. Following this admission, plaintiff was questioned on March 6, 1998 by the Brigade of Midshipmen Medical Officer ("Medical Officer"), who suspected that plaintiff had made a false official statement during his January 8, 1998 eye examination. *Id.* at 0027. During this questioning, the plaintiff once again admitted that he had been deceitful when answering questions during his previous eye examination. *Id.* The Medical Officer subsequently reported the plaintiff's conduct to the Midshipman Brigade Honor Board ("Honor Board"), which is a panel of students responsible for investigating and conducting hearings regarding alleged student violations of the Academy's honor code. *Id.*

**(B) *The Plaintiff's Separation Proceedings from the Academy***

On April 13, 1998, the plaintiff appeared before the Honor Board and pled guilty to lying. *Id.* at 0147, 0150–51. The plaintiff informed the Honor Board that he had confessed to his company commander and to the Medical Officer because he was "tired of living a charade and wanted to clear his conscience even though he was aware of the worse case scenario that comes out of this, everyone's aware of it, you know, as far as separation." Def.'s Mot., Memorandum of Law in Support of Defendant's Motion to Dismiss or for Summary Judgment ("Def.'s Mem.") at 7 (citing A.R. at 153) (internal citations omitted). On May 5, 1998, a hearing was conducted by the Commandant of Midshipman ("Commandant"). A.R. at 0005. The plaintiff did not receive notification immediately prior to this hearing that if he was separated, he may become responsible for repaying the costs of his Naval Academy education. Compl. ¶¶ 21–23. During the Commandant's hearing, the plaintiff presented witnesses and made a statement on his own behalf in which he acknowledged

that he had committed an honor code violation, expressed remorse for his conduct and indicated his hope that he would have a future in the Navy. A.R. at 0165–69. Upon hearing and evaluating all of the evidence presented, the Commandant informed the plaintiff that he was going to recommend to the Superintendent of the Academy ("Superintendent") that the plaintiff be discharged from the Academy. *Id.* at 0006. On May 26, 1998, the Superintendent informed the plaintiff that he concurred with the Commandant's recommendation and he submitted a memorandum to the Secretary recommending the plaintiff's discharge, noting that the plaintiff had incurred a three-year service obligation, but that based on the circumstances he believed that the plaintiff was unfit for active duty. *Id.* On June 1, 1998, the plaintiff signed a "Statement of Understanding[,]" which advised him of his reimbursement obligation and his right to have an investigation conducted to determine the validity of the debt. *Id.* at 0007. The plaintiff also submitted at that same time a document entitled "Advisement of Options Pertaining to My Separation from the Naval Academy[,]" which stated that he did not acknowledge that he was obligated to reimburse the United States government in the amount of $94,555.10. *Id.* The plaintiff was informed that he could petition the Secretary for a waiver of the active duty service or reimbursement obligations, and that the plaintiff responded that it was his preference to "provide monetary recoupment in lieu of active duty service." *Id.* The plaintiff then submitted an eight-page Show Cause statement on this same date requesting a waiver of both the monetary reimbursement and the active duty service. *Id.*

On June 3, 1998, the Superintendent sent the Secretary another memorandum on the plaintiff's separation proceedings,

recommending that the plaintiff reimburse the United States government for his educational expenses. *Id.* at 0008 On July 13, 1998, the Chief of Naval Personnel endorsed the Superintendent's recommendation, which the Assistant Secretary of the Navy for Manpower and Reserve Affairs, acting for the Secretary, approved on August 6, 1998. *Id.*

### (C) *The DAJAG Advisory Opinion and the BCNR's Decision*

Following the plaintiff's separation from the Academy, his counsel sent two letters to the Defense Finance and Accounting Service (DFAS) in January and February of 1999 stating that his client was contesting the debt and also requested an explanation of the basis and amount of the debt. *Id.* at 0097–98. A letter to the same effect was sent to the Superintendent on August 28, 1999. *Id.* at 0100. On September 20, 1999, the plaintiff filed a petition with the BCNR asserting several errors allegedly committed by the defendants. *Id.* at 0032. Of significance to what has been brought to this Court for resolution, the plaintiff asserted that he had not been provided with the proper warning pursuant to 10 U.S.C. § 2005(g)(2) and that the monetary recoupment obligation was improper since an investigation pursuant to 10 U.S.C. § 2005(g)(1) to determine the validity of the debt had not been conducted, despite the challenge he had raised. *Id.* at 0040–41.

The BCNR received an Advisory Opinion from the DAJAG that addressed plaintiff's arguments. *Id.* at 0045. The DAJAG stated that because the plaintiff had not contested the debt at the time of separation, an investigation was not mandated, but since the plaintiff was now clearly disputing the debt, an investiga-

tion should be conducted. *Id.* at 0046, 0059. The DAJAG also concluded that the plaintiff's failure to receive a specific advisement immediately prior to the Honor Board proceeding regarding the potential recoupment of his educational expenses amounted to harmless error since he had been informed on two prior occasions that discharge from the Naval Academy could obligate him to pay for his Academy-related educational expenses. *Id.* at 0046, 0060.

The plaintiff responded to the DAJAG Advisory Opinion [3] claiming that if he had been informed of the potential reimbursement obligation immediately prior to the Honor Board hearing, he would have taken different actions that would have significantly increased his prospects of achieving a favorable outcome. Plaintiff also noted that if a debt investigation was conducted now it would be minimally effective due to the passage of time. He therefore asserted that his ability to contest the debt had been substantially impaired as a result of the Navy's delay in conducting the investigation. *Id.* 0068.

On April 30, 2001, the plaintiff was notified that his petition had been denied by the BCNR. The BCNR found that because the plaintiff had previously signed two written advisements informing him of the possibility that he would have to pay for his Academy-related educational expenses upon his separation from the Academy rendered the warnings omission prior to the hearing harmless. *Id.* The BCNR also held that the circumstances surrounding his discharge from the Academy provided a variety of reasons for requiring the plaintiff to reimburse the government and therefore the failure to investigate the validity of the debt was also harmless. *Id.*

---

3. The document is actually titled "Legal Analysis[,]" but the BCNR refers to it as an Advi-

sory Opinion, which is how the Court will also reference the document hereafter.

On May 22, 2001, the plaintiff filed this action to challenge the BCNR's decision.

## II. *Standard of Review*

■ Judicial review of an administrative agency's decision is authorized by the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701–706 (2000). Under the APA, this Court may only set aside agency actions, findings, and conclusions that are in violation of 5 U.S.C. § 706(2). Thus, the scope of the Court's review here is solely to determine whether the Secretary's decision to adopt the BCNR's recommendation to deny the plaintiff's petition was arbitrary, capricious, an abuse of discretion, contrary to law or regulations, or unsupported by substantial evidence. 5 U.S.C. § 706(2).[4] When reviewing a decision by a military Correction Board, a Court must do so under an "unusually deferential application of the 'arbitrary or capricious' standard of the APA." *Musengo v. White*, 286 F.3d 535, 538 (D.C.Cir.2002) (citing *Kreis v. Sec'y. of the Air Force*, 866 F.2d 1508, 1514 (D.C.Cir.1989)); *Cone v. Caldera*, 223 F.3d 789, 792–93 (D.C.Cir. 2000). The District of Columbia Circuit observed that

> [p]erhaps only the most egregious decisions may be prevented under such a deferential standard of review. Even if that is all the judiciary can accomplish, in reconciling the needs of military management with Congress's mandate for judicial review, then do it we must; it is

not for us but for Congress to say whether the game is worth the candle. *Kreis*, 866 F.2d at 1515. Accordingly, the Court must determine only whether the Secretary's decision is flawed for one or more of the reasons enumerated in 5 U.S.C. § 706(2), not whether the decision was correct. *Kreis*, 866 F.2d at 1511. "Like appellate courts, district courts do not duplicate agency fact-finding efforts. Instead, they address a predominantly legal issue: Did the agency 'articulate a rational connection between the facts found and the choice made'?" *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1096 (D.C.Cir.1996), *cert. denied*, 519 U.S. 1077, 117 S.Ct. 737, 136 L.Ed.2d 676 (1997) (quoting *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974)).

## III. *Legal Analysis*

**(A)** *The Secretary's Failure to Designate an Official to Investigate the Disputed Debt*

In 10 U.S.C. § 2005, Congress provides for the mandatory investigation into the validity of a disputed debt incurred by an individual who has entered into a written agreement to reimburse the United States for advanced education assistance. Section 2005(g)(1) states that when an individual disputes the validity of the debt:

> the Secretary *shall* designate a member of the armed forces or a civilian employ-

---

**4.** 5 U.S.C. § 706(2) states that:
[t]he reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be-
(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
(B) contrary to constitutional right, power, privilege, or immunity;
(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;
(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

ee under the jurisdiction of the Secretary to investigate the facts of the case and hear evidence presented by the person who may owe the debt and other parties, as appropriate, in order to determine the validity of the debt. That official *shall* report the official's findings and recommendations to the Secretary concerned. If the justification for the debt investigated includes an allegation of misconduct, the investigating official shall state in the report that official's assessment as to whether the individual behavior that resulted in the separation of the person who may owe the debt qualifies as misconduct . . .

*Id.* (emphasis added). As mentioned above, the BCNR concluded that the defendant "violated § 2005(g)(1) by failing to direct an investigation prior to directing monetary recoupment [because the BCNR] believe[d] that [the plaintiff's] statement in the 1 June 1998 Advisement of Options that 'I do not acknowledge that I am so obligated,' brought [the plaintiff] within the ambit of § 2005(g)(1)."[5] A.R. at 0011. Notwithstanding this violation, the BCNR concluded, and now the Secretary asserts, that this failure to conduct the investigation constituted harmless error because the plaintiff did not offer proof that he is not subject to the reimbursement obligation and he failed to provide any evidence that the amount in question was incorrect. *Id.; see* Def.'s Mem. at 28–29.

 The Court is unable to agree with the defendant. In 1993, Congress specifically amended 10 U.S.C. § 2005 to include subsection (g). Although the legislative history of this amendment does not provide significant insight into why it was enacted, it does provide that "[t]his section would amend section 2005 of title 10, United States Code to *require* the secretaries of the military departments to establish procedures to advise members of advanced educational debts and to conduct investigations to determine if advanced educational debts should be collected." H.R.Rep. No. 103–200 (1993), *reprinted in* 1993 U.S.C.C.A.N.2013 (emphasis added). More importantly, in drafting the language of the statute, Congress has made it a mandatory obligation through the plain language of the statute that the Secretary "shall" designate an official to investigate the validity of a debt if disputed. The Supreme Court has made clear "that when a statute uses the word 'shall,' Congress has imposed a mandatory duty upon the subject of the command." *Forest Guardians v. Babbitt,* 174 F.3d 1178, 1187 (10th Cir.1999) (citing *United States v. Monsanto,* 491 U.S. 600, 607, 109 S.Ct. 2657, 105 L.Ed.2d 512 (1989)) ("by using 'shall' in civil forfeiture statute, 'Congress could not have chosen stronger words to express its intent that forfeiture be mandatory in cases where the statute applied'"); *Pierce v. Underwood,* 487 U.S. 552, 569–70, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) ("Congress' use of 'shall' in a housing subsidy statute constitutes 'mandatory language'"); *Barrentine v. Arkansas–Best Freight Sys., Inc.,* 450 U.S. 728, 739 n. 15, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) ("same under Fair Labor Standards Act"); *see also Black's Law Dictionary* 1233 (5th ed. 1979) ("As used in statutes . . . [shall] is generally imperative or mandatory.").

---

**5.** Not only did the plaintiff unequivocally contest his educational debt in the "Advisement of Options Pertaining to My Separation from the Naval Academy[,]" but letters were also sent by plaintiff's counsel in January and February of 1999 to the DFAS and to the Superintendent of the Academy on August 28, 1999, reiterating that the plaintiff was contesting the validity of the debt and was also requesting an explanation of the basis and amount of the debt, A.R. at 97–98. *Id.* at 100.

In *Florida Power & Light Company v. Lorion*, 470 U.S. 729, 105 S.Ct. 1598, 84 L.Ed.2d 643 (1985), the Supreme Court stated that

> [i]f the record before the agency does not support the agency action, *if the agency has not considered all relevant factors*, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course of action, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

*Id.* at 744, 105 S.Ct. 1598 (emphasis added). In reviewing the administrative record, this Court is simply unable to conclude that the Secretary "considered all relevant factors" in light of the fact that an investigation and a report of the investigating official's findings and recommendations pursuant to § 2005(g)(1) never occurred. Surely Congress did not intend for such investigations and reports to be meaningless exercises. The defendant asserts that the failure to conduct an investigation here was harmless because "[o]ther than the fact that the investigation was not conducted, [p]laintiff provided nothing more than his assertion that he would have called witnesses and produced documents to contest the debt ... [and] did not make the slightest proffer of how any witness or document would have changed the ... essential facts of his case." Def.'s Mem. at 28. This reasoning misses the point because what the investigation may reveal is not subject to absolute prediction. Moreover, the simple fact is that the investigation and report are statutorily mandated and in their absence the Court is unable to conclude that the Secretary "considered all relevant factors" in making his determination. Therefore, the Court concludes that it must remand this case back to the Secretary so that he can designate an official to conduct an investigation and issue a report for the Secretary's consideration, as mandated by Section 2005(g)(1).

**(B)** ***The Academy's Failure to Give the Plaintiff a Situational Advisement Regarding the Reimbursement Requirement Prior to a Decision Being Made Based on the Plaintiff's Alleged Misconduct***

As the Court mentioned above, prior to a disciplinary decision being made based on alleged misconduct, the Secretary is required to ensure that a midshipman is advised of the educational expense reimbursement requirement of 10 U.S.C. § 2005(a)(3). Specifically, § 2005(g)(2) states:

> The Secretary of each military department shall ensure that a member of the armed forces who may be subject to a reimbursement requirement under this section is advised of such requirement before (1) submitting a request for voluntary separation, or (2) making a decision on a course of action regarding personal involvement in administrative, nonjudicial, and judicial action resulting from alleged misconduct.

The Secretary does not dispute that the Academy failed to comply with this requirement. *See* Defendant's Response to Plaintiff's Statement of Material Facts as to Which there is No Genuine Issue ("Def.'s Resp. to Pl.'s Facts") at ¶ 7 ("it is admitted that the pre-hearing advisement required by 10 U.S.C. § 2005(g)(2) was not given."). However, the Secretary asserts that the BCNR's conclusion was correct "because it was more reasonable for BCNR to infer that [the] Plaintiff had actual knowledge of the [reimbursement obligation] when he made decisions regarding his Honor Board[,]" Def.'s Mot., Memorandum of Law in Support of Defendant's Motion to Dismiss or for Summary Judgment ("Def.'s Mem.") at 24, and that

in any event the omission was harmless, *id.* at 24–28. As support for its position, the defendant points to two separate occasions, prior to the occurrence of the alleged misconduct in this case, when the plaintiff signed written agreements acknowledging that if he failed to fulfill his service obligation, either voluntarily or involuntarily, he would be subject to reimbursing the United States for the costs of the educational benefits he received from the Academy.[6] First, on June 1, 1994, prior to attending the Academy, the plaintiff entered into a written agreement with the United States promising to complete the course of instruction and to serve a minimum of six years of active duty following graduation. Def.'s Facts at ¶ 2. In addition, he also acknowledged at the same time that if he "successfully completed more than two years of study but then failed to complete the entire four-year course of instruction, the Navy could require him to serve in an enlisted status for not more than four years." *Id.* at ¶ 3. Plaintiff also "expressly agreed that, if he failed to fulfill such a service obligation, whether voluntarily or as a result of misconduct, he would reimburse the Government for the cost of the education received, at a rate determined by the Navy according to applicable directives." *Id.* at ¶ 4. Then, on August 20, 1996, prior to his third year of study at the Academy, the plaintiff signed another written statement that contained essentially the same terms as his 1994 agreement.

The BCNR relied on both of these service agreements to support its conclusion that the plaintiff "had reasonable notice and sufficient knowledge to make an informed decision concerning the administrative actions confronting [him]." A.R. at 0010. The BCNR found that the Acade-

my's failure to provide the plaintiff with the situational advisement concerning the reimbursement obligation immediately before the disciplinary hearing (the Honor Board) was harmless error, as it "did not influence the final decision, or had only a very slight effect." *Id.* at 0011. In coming to this conclusion, the BCNR relied upon the DAJAG's Advisory Opinion, which stated that "[t]o demonstrate harm from the error, [the plaintiff] would need to demonstrate a lack of knowledge of the reimbursement requirement, that his decisions regarding personal participation in the proceedings would have been different, and that the outcome of the proceedings would have been different." *Id.* at 0060. Not only did the Advisory Opinion conclude that it was "reasonable to infer" that the plaintiff knew of this reimbursement requirement, but also opined that "[b]ecause he had made an unsolicited, voluntary confession of his misconduct, it is reasonable to conclude he would not have decided on a completely different course of action had he been specifically advised of the possibility of reimbursement." *Id.* at 0060–61. In addition, the Advisory Opinion stated that "even if receiving such advisement were to cause [the plaintiff] not to plead guilty or to remain silent at all proceedings, the Honor Board and the Commandant, as well as all subsequent reviewing officials, had available to them [plaintiff's] prior self-incriminating statements on which to base their action." *Id.* at 0061. Thus, the Advisory Opinion concluded that "it is extremely unlikely a different decision by [the plaintiff] would have led to a different outcome." *Id.*

While it would appear that the plaintiff is unable to show any prejudice from the Academy's failure to comply with the reimbursement warning requirement of

---

6. The educational benefits are calculated by the Academy Comptroller and include: tu-

ition, room, and board for each academic year. *See* Def.'s Facts at ¶ 4 n. 2.

§ 2005(g)(2), the Court defers making a ruling on the harmlessness question in light of the defendant's failure to comply with the investigation mandate of § 2005(g)(1) and this Court's decision to therefore remand this case to the Secretary because of this omission. As the official designated by the Secretary to investigate the disputed debt is required to determine whether the plaintiff's conduct "qualifies as misconduct under subsection (a)(3)[ ]" of § 2005, the Court will leave for that official in the first instance to evaluate what impact, if any, the failure to advise the plaintiff has on the validity of the debt.

## IV. *Conclusion*

For the aforementioned reasons, the Court finds it appropriate to remand this case back to the Secretary so that he may comply with the mandatory investigation requirement of 10 U.S.C. § 2005(g)(1), at which time, the appointed investigating official may consider the Academy's failure to comply with the reimbursement warning requirement of 10 U.S.C. § 2005(g)(2) in assessing the validity of the disputed debt.[7]

## *ORDER*

Upon consideration of the Defendant's Motion to Dismiss or in the alternative, for Summary Judgment and the Plaintiff's Cross–Motion for Summary Judgment, and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is hereby,

**ORDERED** that summary judgment shall be **GRANTED** to the defendant on Count I and Count III of the plaintiff's complaint. It is

**FURTHER ORDERED** that the above-captioned case shall be **REMANDED** to the defendant to comply with the mandato-

ry investigation requirement of 10 U.S.C. § 2005(g)(1), at which time, the appointed investigating official may consider the defendant's failure to comply with the reimbursement requirement warning of 10 U.S.C. § 2005(g)(2) in assessing the validity of the disputed debt. It is

**FURTHER ORDERED** that this case shall be **DISMISSED WITHOUT PREJUDICE**.

---

7. An Order consistent with the Court's ruling accompanies this Memorandum Opinion.