ROBERTS, Circuit Judge,
concurring in part and dissenting in part.
I concur in Parts I and II of the court’s opinion. I must dissent, however, from the conclusion in Part III that the Secretary’s interpretation of her trust reporting authority was unreasonable under step two of Chevron.
I begin with the statutory language. The source of the Secretary’s authority for requiring reporting by union-affiliated trusts is section 208:
The Secretary shall have authority to issue, amend, and rescind rules and regulations prescribing the form and publication of reports required to be filed under this subchapter and such other reasonable rules and regulations (including rules prescribing reports concerning trusts in which a labor organization is interested) as he may find necessary to prevent the circumvention or evasion of such reporting requirements.
LMRDA § 208, 29 U.S.C. § 438 (emphasis added).
We need not guess at what constitutes a “trust in which a labor organization is interested,” for section 3(l) provides a definition:
“Trust in which a labor organization is interested” means a trust or other fund or organization (1) which was created or established by a labor organization, or one or more of the trustees or one or more members of the governing body of *392 which is selected or appointed by a labor organization, and (2) a primary purpose of which is to provide benefits for the members of such labor organization or their beneficiaries.
29 U.S.C. § 402(i).
The Secretary’s rule requires unions that meet the criteria for LM-2 reporting to file an additional report for “any trust in which the labor organization is interested, if the trust has $250,000 or more in annual receipts and the labor organization contributed $10,000 or more to the trust during the reporting year, or that amount was contributed on the labor organization’s behalf.” Labor Organization Annual Financial Reports; Final Rule, 68 Fed. Reg. 58,374 (Oct. 9, 2003). The Secretary considered other approaches to defining which trusts posed a risk of being used to circumvent or evade required union reporting, but rejected them “in favor of the statutory definition of a trust in which a labor organization is interested,” adding dollar thresholds “so that an undue reporting burden is not imposed on unions with limited finances.” Id. at 58,413, 58,415.
The Secretary explained why such related entities pose a danger of allowing unions to circumvent their reporting obligations. The Secretary’s proposed rule-making notes that “labor organizations have become more multifaceted and have created hybrid structures for their various activities.” Labor Organization Annual Financial Reports; Proposed Rule, 67 Fed. Reg. 79,280 (Dec. 27, 2002). Trusts in which unions have an interest “pose the same transparency challenges as ‘off-the-books’ accounting procedures in the corporate setting: largé-scale, potentially unattractive financial transactions can be shielded from public disclosure and accountability through artificial structures, classification and organizations.” Id. at 79,282. Under the earlier rules, union members may have had “no way to determine whether the funds in question were actually spent for [their] benefit.” Id.
The Secretary pointed 'to several cases in which union members could not obtain information about a particular trust because no union was required to file a report on its behalf. In one instance, a credit union with 97 percent of deposits attributable to one union local doled out more than half its loans to four loan officers, three of whom were union officials. Id. at' 79,283. In another, transactions involving a strike fund to which 29 unions contributed went completely unreported because “no single union wholly owned the fund.” Id. The Secretary reasoned that trust reporting would “properly ensure union democracy, fiscal integrity and transparency in a manner consistent with the intent of Congress in enacting the LMRDA.” Id.; see S.Rep. No. 86-187, at 41 (1959) (“The committee expects that, in exercising his rulemaking power under [the Senate version of LMRDA § 208], the Secretary of Labor will be vigilant in making sure that all types of special funds shall be reported.”). As the district court concluded, “the rulemaking record shows clearly that the Secretary explained, in great detail, her determination that the Form T-l [trust reporting] is necessary to prevent the circumvention of the LMRDA reporting requirements.” AFL-CIO v. Chao, 298 F.Supp.2d 104, 118 (D.D.C.2004).
Under step two of Chevron, that determination is not to be disturbed unless “arbitrary or capricious in substance, or manifestly contrary to the statute.” Household Credit Servs., Inc. v. Pfennig, 541 U.S. 232, 124 S.Ct. 1741, 1748, 158 L.Ed.2d 450 (2004) (internal quotation marks omitted). “We accord deference to agencies under Chevron ... because of a presumption that Congress, when it left ambiguity in a stat *393 ute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows.” Smiley v. Citibank (South Dakota), N.A., 517 U.S. 735, 740-41, 116 S.Ct. 1730, 135 L.Ed.2d 25 (1996). The usual deference is heightened in this case, however, for several reasons:
First, the statute speaks in terms of what is “necessary” to prevent circumvention or evasion of the reporting required under the statute. This is an inherently discretionary standard that clearly invites further definition by the Secretary. See McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 413-15, 4 L.Ed. 579 (1819); see also Nat’l R.R. Passenger Corp. v. Boston & Maine Corp., 503 U.S. 407, 419, 112 S.Ct. 1394, 118 L.Ed.2d 52 (1992) (ICC interpretation of “required” to mean “useful and appropriate” was reasonable in context of statute). Determining what is “necessary” unavoidably calls for the exercise of the Secretary’s judgment and expertise.
Second, Congress did not merely delegate to the Secretary the authority to require such trust reporting as may be necessary to prevent circumvention or evasion, but instead such reporting “as [s]he may find” necessary to that end. 29 U.S.C. § 438 (emphasis added). We have noted in the past the “distinction between the objective existence of certain conditions and the Secretary’s determination that such conditions are present,” stressing that a statute phrased in the latter terms “ ‘fairly exudes deference’ to the Secretary.” Kreis v. Sec’y of the Air Force, 866 F.2d 1508, 1513 (D.C.Cir.1989). While not foreclosing review altogether, but cf. Drake v. FAA, 291 F.3d 59, 72 (D.C.Cir.2002) (“What may- be thought necessary may not in fact be necessary, but a court may pass judgment only on the latter, not the former.”), section 208 by its terms “substantially restrict[s] the authority of the reviewing court to upset the Secretary’s determination,” Kreis, 866 F.2d at 1514.
Third, the delegation at issue here is to the Secretary to promulgate rules she finds necessary “to prevent” a future contingency — circumvention or evasion of required reporting. 29 U.S.C. § 438. The delegation necessitates a predictive judgment about risk, and “an agency’s predictive judgment regarding a matter within its sphere of expertise is entitled to ‘particularly deferential’ review.” Fresno Mobile Radio, Inc. v. FCC, 165 F.3d 965, 971 (D.C.Cir.1999). The trust reporting rule represents the Secretary’s best judgment as to when union-affiliated trusts are likely to pose a risk of being used to circumvent the reporting requirements. It is a prophylactic rule and, as such, need not be crafted with “exacting precision.” Biloxi Reg’l Med. Ctr. v. Bowen, 835 F.2d 345, 350 (D.C.Cir.1987).
In the face of a statutory delegation freighted with deference, the majority applies the very antithesis of deferential review. My colleagues fault the Secretary’s rule because they believe that the level of trust reporting specified by the Secretary would only be necessary to prevent evasion of the LMRDA requirements in “circumstances involving dominant union control over the trust’s use of union members’ funds or union members’ funds constituting the trust’s predominant revenues,” Op. at 390, and that the Secretary’s examples do not demonstrate a risk of evasion where such circumstances are not present. But nothing in either the LMRDA or the usual standards governing review of agency action under Chevron step two demands that the Secretary recite examples to support *394 every possible application of the rule. Rather, we require only that she provide a reasoned explanation for her judgment that reporting is “necessary to prevent ... circumvention or evasion.” 29 U.S.C. § 438. She has clearly done so here. See supra pp. 392-93.
The majority’s main objection is that the Secretary’s rule “mandates reporting on trusts even where there is no appearance that the union’s contribution of funds to an independent organization could circumvent or evade union reporting requirements by, for example, permitting the union to maintain control of the funds.” Op. at 389 (emphasis added). What the majority calls an “independent organization” is, of course, defined in the statute as a “[tjrust in which a labor organization is interested,” because it “was created or established by a labor organization, or one or more of the trustees or one or more members of [its] governing body ... is selected or appointed by a labor organization,” and because “a primary purpose of [the organization] is to provide benefits for the members of such labor organization or their beneficiaries.” 29 U.S.C. § 402®. The majority may be perfectly comfortable that there is no risk that such an organization may be used by a union to circumvent or evade reporting requirements, but it is surely reasonable for the Secretary — to whom the responsibility has been delegated — to reach a different conclusion.
The majority’s reading, far from defining the “bounds of the permissible” under Chevron step two, Barnhart v. Walton, 535 U.S. 212, 218, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002), is itself rather implausible. First, it renders largely superfluous the judgment made by Congress when it specifically defined a “trust in which a labor organization is interested.” If “circumvention or evasion” carries within it an implicit requirement of union dominance or control, beyond the definition in section 3ffl, there is no need for that definition at all. The majority’s approach is akin to a court, presented with a statute permitting the regulation of trucks weighing over ten tons where “necessary to prevent damage to highways,” nevertheless exempting-trucks under twenty tons on the ground that they present no such risk — as though Congress had made no judgment on the matter. See Fed. Elec’n Comm’n v. Nat’l Right to Work Comm., 459 U.S. 197, 210, 103 S.Ct. 552, 74 L.Ed.2d 364 (1982) (Court will not “second-guess a legislative determination as to the need for prophylactic measures where corruption is the evil feared”).
Second, the majority takes an exceedingly narrow view of the purpose of the reporting requirements. It dismisses as somehow irrelevant the Secretary’s concern that in the absence of trust disclosure, “union members may have no way to determine whether [union funds transferred to trusts] were actually spent for the benefit of members.” 67 Fed. Reg. at 79,282; see Op. at 390. Yet, in making the definition of a “trust in which a labor organization is interested” turn on whether one of the primary purposes of the trust is “to provide benefits for [union] members ... or their beneficiaries,” Congress plainly evinced the very same concern. See LMRDA § 3(1). Indeed, the whole point of the LMRDA is to ensure, through broad financial disclosure, that members’ funds are not being misappropriated by those to whom the funds have been entrusted. See H.R.Rep. No. 86-741, at 7 (1959) (“[t]he members of a labor organization are the real owners of the money and property of such organization and are entitled to a full accounting of all transactions involving such money”). The statute does not prescribe reporting merely for reporting’s sake.
*395 It is a final strike against the plausibility of the majority’s reading that it takes no account of the Secretary’s need for a bright-line rule in managing what is, fundamentally, a reporting and disclosure scheme. Unlike the express statutory criteria of section 3(i) and the Secretary’s dollar threshold, the majority’s “circumstances involving dominant union control” test, Op. at 390, “would be hard to apply, jettisoning relative predictability for the open-ended rough-and-tumble of factors,” Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 547, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). The circumstances of union control will come in many varieties. Presumably, one union-appointed trustee will normally not be enough; but if there are only three trustees, or if one of the other trustees is affiliated with another union, it might be. In deciding to incorporate the statutory definition into her rule, the Secretary explained the difficulties of an alternative approach along the lines endorsed by the majority. See Op. at 390-91. She specifically noted that looking to the degree of union ownership and control “does not appear to be a workable or appropriate approach. Union ownership and control in the context of a union’s participation in a trust that provides benefits to the union membership are very difficult concepts to quantify.” 68 Fed. Reg. at 58,415. The difficulties of such an approach, with the likelihood of attendant litigation, are precisely why the “single entity” test received zero favorable comments during rulemak-ing and ultimately was rejected by the Secretary in favor of the statute’s bright-line rule. See id. at 58,416.
Perhaps the Secretary was wrong in her assessment about what degree of union involvement in the affairs of a trust poses a danger of the trust being used to circumvent or evade reporting requirements, but see Time Warner Entertainment Co. v. FCC, 240 F.3d 1126, 1141 (D.C.Cir.2001) (FCC’s attribution of influence based on control of 5% of company’s voting shares was reasonable), and wrong in her judgment that a multi-factor domination or control test would prove unworkable, and perhaps the majority’s approach is right. That is not the question before the court. The statute plainly delegates the authority to make such policy-laden judgments to the Secretary- — the question is what “[s]he may find necessary to prevent the circumvention or evasion of ... reporting requirements,” 29 U.S.C. § 438 (emphasis added) — and the Secretary has reasonably exercised that authority. I therefore respectfully dissent from Part III of the court’s opinion.